## WEST FLORIDA SEAFOOD, INC., Appellant,

v.

## JET RESTAURANTS, INC., Appellee.

### No. 93–1377.

United States Court of Appeals, Federal Circuit.

July 25, 1994.

---

Charles A. McClure, Tampa, FL, submitted for appellant.

Before ARCHER, Chief Judge,* RICH and NEWMAN, Circuit Judges.

RICH, Circuit Judge.

West Florida Seafood, Inc. (West) appeals the February 9, 1993, decision of the Trademark Trial and Appeal Board (TTAB) denying West's petition to cancel the service mark registration "FAST EDDIE'S FAMOUS HAMBURGERS" for restaurant services, Reg. No. 1,464,008, owned by Jet Restaurants, Inc. (Jet).[1] We reverse and remand.

## I. BACKGROUND

### A. TTAB Proceedings

West, d/b/a FAST EDDIE'S PLACE, filed an application with the U.S. Patent and Trademark Office (PTO) on March 17, 1987, to register the mark "FAST EDDIE'S"[2] for restaurant services, alleging a date of first use of February 2, 1981. In a communication mailed July 19, 1988, the PTO denied registration in light of Jet's registration, which was based on an application filed in mid-February of 1987 claiming a date of first use of December of 1986. The Examining Attorney concluded that there was a likelihood of confusion between Jet's registered mark and the mark for which West sought registration, and consequently denied registration of West's mark.[3]

Approximately five months later, on December 15, 1988, West filed a petition to cancel Jet's registration on the basis of prior use. West asserted that it had used the mark "FAST EDDIE'S" prior to the date of first use claimed by Jet in its registration application,[4] and therefore, because there was a likelihood of confusion between West's

* Chief Judge Archer assumed the position of Chief Judge on March 18, 1994.

1. Jet has not submitted a brief in this appeal, and thus we examine the record only as presented by West.

2. West alleged use of the following marks, among others: "FAST EDDIE'S"; "FAST EDDIE'S PLACE"; and "FAST EDDIE'S PLACE–WARM BEER–LOUSY FOOD."

3. The Examining Attorney found that the dominant portions of Jet's and West's marks were identical and that these marks were used for similar services.

4. As noted by the TTAB, Jet admitted in its answer to West's petition that Jet had not used its mark prior to December of 1986.

and Jet's marks, Jet's registration should be cancelled. To establish prior use of the mark "FAST EDDIE'S," West submitted three advertisements placed in local newspapers, a Florida state registration for "FAST EDDIE'S PLACE—WARM BEER—LOUSY FOOD," three regulatory licenses, and a Florida Food Service Inspection Report.

## B. *TTAB Decision*

The TTAB held that West had failed to prove prior use, and therefore, that it need not consider the issue of likelihood of confusion. The TTAB found the evidence West submitted insufficient to establish "either prior use or continuous use" of the mark "FAST EDDIE'S" by West before Jet's undisputed date of first use of that mark in 1986. To reach this conclusion, the TTAB individually discredited, at pages 3–4 of its opinion, each piece of evidence submitted by West as follows:

> Although petitioner has submitted newspapers from 1983 and 1984 which contain advertisements for FAST EDDIE'S PLACE, it has not submitted any evidence that these advertisements were placed by petitioner or refer to petitioner's services.

> . . . .

> The state registration shows that an application was filed by petitioner on June 19, 1985, claiming a date of first use of the mark on February 2, 1981; however, neither the claim made in the application nor the filing date of an application for a state registration constitutes proof of use of the mark. As for the regulatory licenses, the first, which is for the period February 4, 1981–September 30, 1981, was issued to Edwin Porter, rather than the petitioner herein. The second, which is for the period October 1, 1984–September 30, 1985, licensed petitioner to engage in the business of "Fast Eddie's Place on Pier restaurant," while the third licensed petitioner to engage in the business of "Fast Eddie's Place on the pier" between October 1, 1985 and September 30, 1986. While the second and third licenses show that petitioner was granted a license to do business under the name in question, none of these licenses

proves that petitioner actually engaged in restaurant services under the mark during these periods. The final official record, a food service inspection report dated November 1, 1985, does not refer to petitioner, but indicates inspection of a business owned by "E. Porter."

Having dismissed all of the evidence that West submitted in the foregoing manner, the TTAB then reasoned in the alternative at page 4 of its decision:

> Even if petitioner could rely on any of the printed publications or official documents to demonstrate its priority, none of the materials which have been submitted shows that petitioner has made *continuous use* of the mark FAST EDDIE'S, or any variant thereof. A necessary component of the ground of likelihood of confusion under Section 2(d) of the Trademark Act is that the plaintiff's mark must have been previously used in the United States and not abandoned. In the present case, none of the materials submitted by petitioner bears a date later than November 26, 1985. Thus, even if we were to deem petitioner's materials as demonstrating use of its mark as of the dates shown therein, petitioner's claim must fail because it has not submitted evidence of the use of its mark for the *two years prior to the filing of its petition or any time thereafter*. [Emphasis added.]

West asserts in this appeal that the TTAB erred in finding the evidence of record to be non-probative, and consequently holding that West failed to establish prior and continuous use. West further asserts that this error led the TTAB to improperly refuse to consider the issue of likelihood of confusion.

## II. DISCUSSION

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(4)(B) (1988).

Section 3 of the Lanham Act provides for the registration of service marks. 15 U.S.C. § 1053. Section 2(d) of the Act, however, bars the registration of a service mark which

> [c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a *mark or trade name previously used* in the United States

by another *and not abandoned,* as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive. [Emphasis added.]

15 U.S.C. § 1052(d). A "service mark" is any word, name, symbol, or device, or any combination thereof, used to identify and distinguish services from those of others and to indicate the source of those services. 15 U.S.C. § 1127; *National Cable Television Ass'n., Inc. v. American Cinema Editors, Inc.,* 937 F.2d 1572, 1576, 19 USPQ2d 1424, 1428 (Fed.Cir.1991); *see also* 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 4.04 (3d ed. 1992).

A. *Prior Use*

▇▇▇ A party claiming prior use of a registered mark may petition to cancel the registration on the basis of such prior use pursuant to section 14 of the Lanham Act. 15 U.S.C. § 1064. The burden of proof in a cancellation proceeding for a service mark registration is no different from that for a trademark or certification mark. Thus, a presumption of validity attaches to a service mark registration, and the party seeking cancellation must rebut this presumption by a preponderance of the evidence. *Martahus v. Video Duplication Services, Inc.,* 3 F.3d 417, 421, 27 USPQ2d 1846, 1850 (Fed.Cir.1993). *See Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.,* 892 F.2d 1021, 1023, 13 USPQ2d 1307, 1309 (Fed.Cir.1989); 15 U.S.C. § 1057(b). This court reviews factual findings underlying a priority determination for clear error. *Martahus,* 3 F.3d at 421, 27 USPQ2d at 1850; *Weiss Assoc., Inc. v. HRL Assocs., Inc.,* 902 F.2d 1546, 1548, 14 USPQ2d 1840, 1841 (Fed.Cir.1990); *Stock Pot Restaurant, Inc. v. Stockpot, Inc.,* 737 F.2d 1576, 1578, 222 USPQ 665, 666 (Fed.Cir. 1984). In this case, the TTAB committed clear error in holding that West failed to meet its burden as to priority of use.

▇ To reach its conclusion, the TTAB viewed each piece of evidence submitted by West to be insufficient, standing alone, to establish that West used the mark "FAST EDDIE'S" prior to December of 1986. The TTAB reasoned that, when viewed in isolation, each piece of evidence was deficient in some respect and could not serve to establish prior use. For the reasons set forth below, the TTAB erred in so holding.

(1) *Food Service Inspection Report*

The TTAB committed clear error in failing to recognize that the Food Service Inspection Report by itself sufficiently establishes prior use of the mark "FAST EDDIE'S." The TTAB's error stemmed from its erroneous conclusion that the Inspection Report should be disregarded as having no evidentiary value because it "does not refer to petitioner, but indicates inspection of a business owned by 'E. Porter.'" The TTAB failed to note, however, that the Inspection Report does specifically identify that the business inspected was "Fast Eddie's Place" at "101 S. Bay Dr., Anna Maria." When this fact is taken into account, the Inspection Report on its face evidences that a restaurant was operating under the name "FAST EDDIE'S" as of the date of the inspection, November 1, 1985, which is prior to Jet's admitted earliest date of use in December of 1986. The Inspection Report thus supports West's claim that the mark "FAST EDDIE'S" was being used in connection with restaurant services prior to Jet's date of first use, and Jet has failed to present any evidence or arguments to the contrary.[5]

(2) *Cumulative Value of Additional Evidence*

▇ Notwithstanding the above, the additional evidence as a whole further substantiates West's prior use claims. The TTAB concluded that each piece of evidence individually failed to establish prior use. However, whether a particular piece of evidence by itself establishes prior use is not necessarily dispositive as to whether a party has established prior use by a preponderance. Rather, one should look at the evidence as a whole, as if each piece of evidence were part

---

**5.** Moreover, as discussed further herein, the Inspection Report also establishes that "FAST ED-DIE'S" was being used as a trade name prior to Jet's claimed date of first use, and nothing more than trade name use is needed to bar the registration of a mark.

of a puzzle which, when fitted together, establishes prior use. The TTAB failed to appreciate this. Instead, the TTAB dissected the evidence to the point that it refused to recognize, or at least it overlooked, the clear interrelationships existing between the several pieces of evidence submitted. When each piece of evidence is considered in light of the rest of the evidence, rather than individually, the evidence as a whole establishes by a preponderance that West used the "FAST EDDIE'S" mark prior to Jet's admitted first use of the mark.

For example, the three newspaper advertisements submitted corroborate West's prior use assertions.[6] These advertisements are reproduced below:

February 2, 1983

January 5, 1984

January 19, 1984

As is evident, each of these advertisements shows the mark "FAST EDDIE'S" used in association with restaurant services, and there can be no question that a potential customer would have regarded these advertisements as notices to the public that there was a restaurant operating under the name "FAST EDDIE'S" at the advertised location at the time that they were published.[7] Particularly persuasive is that two of these advertisements include maps showing the restaurant's location, and that the January 19 advertisement even includes coupons for use at the restaurant.

■ The TTAB refused to give these advertisements any evidentiary value, however, solely on the basis that there was no evidence that they were placed by West. The TTAB's concern about who placed the advertisements is a red herring. Whether it is clear from the advertisements that they were placed by West is not at all critical, because the underlying corporate identity of an entity

---

**6.** Advertisements may constitute acceptable "specimens" of use. *Lloyd's Food Products, Inc. v. Eli's Inc.*, 987 F.2d 766, 768, 25 USPQ2d 2027, 2029 (Fed.Cir.1993); *Stock Pot Restaurant*, 737 F.2d at 1579, 222 USPQ at 667; *see also In re Republic of Austria Spanische Reitschule*, 197 USPQ 494, 498 (TTAB 1977) ("A service mark application must reflect use of the mark 'in the sale or advertising of services' ... and may include advertisements, brochures, invoices, and virtually every form of printed matter."); *Penta Hotels Ltd. v. Penta Tours*, 9 USPQ2d 1081 (D.Conn.1988).

**7.** The advertisements in this case are not being relied upon for the truth of what they disclose,

i.e., they are not being relied upon to prove that certain items were being sold at particular prices or even to establish by themselves that restaurant services were actually being given, and therefore they do not constitute hearsay. *Compare Gravel Cologne, Inc. v. Lawrence Palmer, Inc.*, 469 F.2d 1397, 1398, 176 USPQ 123, 123 (CCPA 1972). Rather, they are being relied upon merely as evidence that restaurant services were being advertised under the "FAST EDDIE'S" name, which evidence may then be considered together with other evidence to establish that restaurant services were actually being offered under the advertised mark.

who is carrying on a business under a particular mark need never be evident. Indeed, the pertinent inquiry in this case is simply whether a potential customer would have believed that someone was proclaiming to be engaged in restaurant services under the name "FAST EDDIE'S" at the time of the advertisements.[8] That is undoubtedly what a potential customer would have believed in this case.

Moreover, to the extent that the TTAB's decision suggests that West may be attempting to claim prior use for use that it cannot truthfully credit to itself, such a suggestion is nothing more than an unjustifiable refusal to recognize the connection between West Florida Seafood (the corporate name), "FAST EDDIE'S PLACE" (the trade name), and Edwin or E. Porter (the company's president). The TTAB erred in ignoring the rather obvious connection between these corporate, business, and personal "alter egos" operating as "FAST EDDIE'S." These interrelationships were specifically set forth both in West's petition to cancel Jet's registration as well as in West's own application to register the "FAST EDDIE'S" mark, and given the evidence submitted, there is simply no basis in the record to question that the asserted interrelationships exist.[9] Even so, the other evidence of record, including the regulatory licenses and the state registration discussed below, evidence that it is West who has all along been engaged in the restaurant business under the "FAST EDDIE'S" mark.

The regulatory licenses, covering the periods of February 4, 1981 to September 30,

1981 and October 1, 1984 to September 30, 1986, and West's state registration for "FAST EDDIE'S PLACE—WARM BEER—LOUSY FOOD," obtained June 19, 1985 on the basis of a claimed first use of February 2, 1981, also corroborate West's prior use assertions. The TTAB refused to accord this evidence any weight on the basis that "none of these licenses proves that the petitioner actually engaged in restaurant services under the mark during these periods" and "neither the claim made in the application nor the filing date of an application for a state registration constitutes proof of use of the mark." Although there may be merit to the proposition that a license is not in and of itself proof that the licensed entity was actually engaged in the licensed activity, this does not mean that such a license has no evidentiary value at all. Indeed, where there is additional evidence relating to actual use, such a license becomes quite probative in that it further corroborates the other evidence. The same applies to a state registration.

In this case, the licenses and the state registration corroborate not only West's prior use claims but also the asserted interrelationships between West, "FAST EDDIE'S," and Mr. Porter. The TTAB suggested that the first regulatory license should be disregarded because it issued to Edwin Porter, not West. The TTAB failed to acknowledge, however, that Mr. Porter's name was immediately followed by the phrase "Fast Eddie's Place—101 S. Bay" and that the license indicated that it was a license to engage in

**8.** The *Trademark Manual of Examining Procedure* (*TMEP*) makes clear that because services are not tangible items to which labels or tags may be affixed, an applicant for a service mark may submit a variety of "specimens" of use:

Whether a specimen is acceptable to evidence use of the subject matter as a service mark depends upon whether it shows use of the mark in association with the recited services (i.e., in their sale or *advertising*). The manner of use of the specimens must be such that potential purchasers would readily perceive the subject matter as identifying and distinguishing the applicant's services as indicating their source, even if that source is unknown. [Emphasis added.]

*TMEP* § 1301.04 (May 1993). While the *TMEP* does not have the force and effect of law, it sets forth the guidelines and procedures followed by

the examining attorneys at the PTO. Such requirements follow from the statutory definitions of "service mark" and "use in commerce" which require that, to establish use of a service mark, the mark must be "used or displayed in the sale or *advertising* of services" in such a way as "to identify and distinguish the services of one person ... from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127 (emphasis added).

**9.** We further note that there is no indication in the record before us that Jet has ever alleged that West engaged in sham advertising, that is, that West advertised services that it was not actually delivering.

restaurant business. The other two licenses issued to "West Florida Seafood," but also named "Fast Eddie's Place" as the business for which the licenses were sought. As to the state registration for "FAST EDDIE'S PLACE—WARM BEER—LOUSY FOOD," it issued to West Florida Seafood, Inc. from an application filed by Edwin Porter acting as West's president.

### (3) Trade Name Use

 Notwithstanding the foregoing, even if "service mark" use were lacking, the .Inspection Report unquestionably establishes that West was using "FAST EDDIES'S" at the least as a trade name prior to December of 1986, Jet's date of first use. Nothing more than trade name use is required to bar the registration of a mark. *Martahus*, 3 F.3d at 421, 27 USPQ2d at 1850.[10] A "trade name" is "any name used by a person to identify his or her business or vocation." 15 U.S.C. § 1127; *National Cable Television*, 937 F.2d at 1576, 19 USPQ2d at 1427. To establish trade name use, an "organization need only to have used a name.... in a manner that identifies the company by that name.... to the public.... no particular formality of adoption or display is necessary to establish trade name identification." *National Cable Television*, 937 F.2d at 1577, 19 USPQ2d at 1428. In this case, the fact that a public health food inspector believed that the restaurant he was inspecting went by the name "FAST EDDIE'S" is overwhelming evidence that West was identifying its restaurant to the public as "FAST EDDIE'S." Thus, the TTAB also erred in failing to recognize West's prior trade name use of "FAST EDDIE'S."

### B. *Abandonment Issue*

 As discussed previously, the TTAB concluded in the alternative that, even if the evidence submitted established prior use, West failed to prove that it made "continuous use" of the mark "FAST EDDIE'S" during the two years prior to the filing of its petition on December 15, 1988, because none of the

evidence bears a date later than November 26, 1985. The TTAB consequently held that West had failed to prove that it had not abandoned use of its mark. The TTAB's abandonment conclusion is flawed in several respects.

The governing statute does not speak of "continuous use," but rather of whether the mark or trade name has been *"previously used* in the United States by another *and not abandoned."* 15 U.S.C. § 1052(d) (emphasis added). A mark is deemed to be "abandoned" when

> its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. *Nonuse for two consecutive years shall be prima facie evidence of abandonment.* "Use" of a mark means the bona fide use of that mark made in the ordinary course of trade, and not made merely to reserve a right in a mark. [Emphasis added.]

15 U.S.C. § 1127.

Typically, the party claiming abandonment is one seeking cancellation of another's mark. This court has held that, in such a case, the petitioner seeking cancellation bears the burden of proving abandonment by a preponderance of the evidence. *Cerveceria Centroamericana*, 892 F.2d at 1023, 13 USPQ2d at 1309. This is not because there is any special burden of proof attached to "abandonment" allegations per se. Rather, this follows from the fact that a petitioner always bears the burden of proof by a preponderance of the evidence in a cancellation proceeding, whether the argument for cancellation is based on abandonment, likelihood of confusion, or any other ground.

This case differs from the typical case in that it is the petitioner in this case against whom the abandonment allegation has been lodged. The abandonment allegation is, in effect, in the stance of a defense to a prior use assertion. Under the facts of this case, the party asserting abandonment bears at a

10. *See also Malcolm Nicol & Co. v. Witco Corp.,* 881 F.2d 1063, 1065, 11 USPQ2d 1638, 1639 (Fed.Cir.1989); *Alfred Elecs. v. Alford Mfg. Co.,* 333 F.2d 912, 918, 142 USPQ 168, 172 (CCPA 1964); *Cyber–Tronics, Inc. v. Johnson Serv. Co.,* 156 USPQ 583, 586 (TTAB 1967); *Hotel Corp. of Am. v. Inn Am., Inc.,* 153 USPQ 574, 575–76 (TTAB 1967).

minimum a burden of coming forth with some evidence of abandonment. Consequently, we hold the TTAB's abandonment holding to be in error on the basis that Jet failed to come forth with any evidence to support an abandonment holding.

 Notwithstanding the above, we also find troubling that the issue of West's possible abandonment of the mark "FAST EDDIE'S" was raised for the first time, and decided, in the TTAB's decision. At the time West filed its registration application, the evidence submitted therewith foreclosed any abandonment allegation. West's application was not denied until over a year and four months later, and West filed its cancellation petition within five months of this denial. The record is devoid of any evidence that, as of the filing date of West's petition, the TTAB or Jet had raised any abandonment allegations against West. Moreover, during the course of the cancellation proceeding, Jet only alleged in its answer to West's cancellation petition that West had abandoned use of the entire mark "Fast Eddie's Place–Warm Beer–Lousy Food," not that West had abandoned its use of the mark "FAST EDDIE'S." [11]

Given the foregoing, West was never put on notice that it was faced with an abandonment allegation, and thus West was not provided an adequate opportunity to address this issue. This case is thus like *P.A.B. Produits v. Satinine Societa*, 570 F.2d 328, 196 USPQ 801 (CCPA 1978), in which this court's predecessor stated:

> Not until the board opinion was registrant given notice that the record "would sug-

gest" nonuse for over two years; that such nonuse constitutes prima facie abandonment; that registrant had not rebutted the prima facie case; that, therefore, its registered mark was abandoned. In one fell swoop, registrant was informed that there was a prima facie case of abandonment, and that the prima facie case had become conclusive. We believe that such procedure was unfair, to the prejudice of registrant.

*P.A.B. Produits*, 570 F.2d at 332, 196 USPQ at 804. The same reasoning applies in this case, even though it is the petitioner against whom the abandonment allegation has been asserted. Thus, the TTAB's abandonment holding is also in error for this additional reason.

## CONCLUSION

For the foregoing reasons, we reverse the TTAB's holding on the issue of priority, and remand for a determination of the issue of likelihood of confusion and the ultimate issue of cancellation of Jet's registration.[12]

## *REVERSED AND REMANDED.*

---

11. The Board noted this at page 4 of its decision by stating that Jet merely "asserted affirmatively that [West] has either never used the mark FAST EDDIE'S PLACE—WARM BEER—LOUSY FOOD shown in the Florida registration, or has abandoned the mark." More precisely, Jet argued in paragraph 8 of its answer that

> while the Petitioner has apparently obtained a service mark from the Secretary of the State of Florida registering "Fast Eddie's Place–Warm Beer–Lousy Food", the Petition has either (i) never used the service mark, *as registered*, in commerce, instead opting to use "Fast Eddie's Place" or, in the alternative, (ii) *having once used* the service mark *"Fast Eddie's Place–Warm Beer–Lousy Food"* in commerce, the Pe-

titioner has abandoned said mark and, at some time subsequent to the Respondent's registration, has used the trade name "Fast Eddie's Place".

12. In this regard, we note that the Examining Attorney who refused to register West's mark did so on the ground of likelihood of confusion, finding that West's mark, "when used on the identified services, is likely to be confused with the registrant's [Jet's] mark ... when used on the identified services." The Examiner found that the most relevant evidentiary factors, as set out in *In re Du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973), were the similarity of the marks, similarity of the services, and similarity of trade channels of the services.