PER CURIAM.
This is an appeal from the Trademark Trial and Appeal Board, Cancellation No. 24,330, in which appellant Central Mfg. Co. challenges the Board’s decision denying a petition to cancel the registration of the mark “STEALTH” for ceiling fans. We affirm.
BACKGROUND
In 1991, Casablanca Industries obtained a registration for the mark STEALTH for use in connection with ceiling fans. The registration is now owned by Hunter Fan Company. In September 1995, S Industries filed a petition to have the registration cancelled. As grounds for cancellation, the petitioner asserted that it had used the trademark and trade name STEALTH since 1981 on a large number of goods and services; that there was a likelihood of confusion between Hunter’s use of the STEALTH mark and its use of the mark; that Casablanca obtained the registration by fraud; and that the mark was either merely descriptive or deceptively misdescriptive.
The Trademark Trial and Appeal Board forwarded copies of the petition, requests for admissions, and requests for production to Casablanca on October 18, 1995. At that time, however, Casablanca was in bankruptcy, and on November 8, 1995, Hunter acquired the STEALTH registration as part of its acquisition of substantially all of Casablanca’s assets. On November 15, 1995, the petitioner filed a motion for summary judgment. Because of its recent acquisition of all of Casablanca’s assets, Hunter moved for an extension of time to answer the petition and discovery requests and to respond to the motion for summary judgment. On December 12, 1995, the Board suspended the proceedings in accordance with 37 C.F.R. § 2.127(d), which provides that when a summary judgment motion is filed all matters not germane to the motion are suspended.
In late December 1995, the petitioner filed an additional memorandum in support of summary judgment, this time requesting a default judgment because of Hunter’s failure to respond to the requests for admissions. Hunter responded on January 11, 1996, asserting that rule 2.127(d) excused its failure to respond to the discovery requests.
The Board granted Hunter’s request for an extension of time to respond to discovery and to answer the petition, and on June 10, 1999, the Board denied the petitioner’s November 1995 summary judgment motion as well as its request for a default judgment. The Board directed the petitioner to file an amended and more specific petition, which the petitioner filed on July 30, 1999, adding appellant Central Mfg. Co. as a party to the petition at that time.
Hunter answered the amended petition on October 15, 1999. The petitioners argued that Hunter’s response was untimely and again moved for a default judgment. Hunter contended in sworn affidavits that the parties had reached an agreement that Hunter could have an extension of time for answering the petition. In response, the petitioners asserted that Hunter’s representatives had “perjured themselves before the Board,” but they presented no sworn allegations supporting that assertion. On August 31, 2000, the Board denied the motion for a default judgment and set discovery and trial dates.
Numerous motions by the petitioners followed, reflecting extensive disputes over discovery and other issues. Because of the inordinately large number of motions filed by the petitioners, the Board in February 2001 issued an order directing the *158 petitioners’ representative to seek leave from the Board before filing any further pretrial motions. Discovery and testimony periods were also reset.
Eventually, the petitioners filed four notices of reliance, which comprised all of their evidence on the merits. They introduced no witness testimony. Hunter Fan put forth one witness during the testimony phase, who testified to the authenticity of Hunter’s documentary evidence and Hunter’s use of the STEALTH mark.
The Board declined to consider the petitioners’ first two notices of reliance because they were filed by a non-party to the proceeding, Central Mfg., Inc. (as opposed to Central Mfg. Co., the named party). The Board also refused to consider the first notice of reliance on the ground that the evidence proffered in that notice was inadmissible hearsay. The second notice was also refused because it was filed late, after the close of the petitioners’ testimony period.
The third notice of reliance was filed in response to the Board’s October 4, 2001, order allowing the petitioners an opportunity to submit status and title copies of registrations that they had pleaded, as well as a 20-day testimony period for the limited purpose of submitting evidence or testimony pertaining to those registrations. The petitioners attempted to enter additional registrations that had not been pleaded, along with the same documentary evidence that had been proffered in the first notice of reliance, which had been excluded. The Board excluded that notice of reliance for failing to comply with its October 4 order.
The petitioners filed a final, fourth notice of reliance during their rebuttal period, which included almost all the evidence they had previously offered, as well as a printout from an Internet website and an invoice from a Taiwanese company to a non-party, Stealth Industries. The Board excluded the previously offered evidence on the same bases as before. It also found that most of the submitted evidence should have been part of the petitioners’ case-in-chief, and thus was untimely, since it was being proffered during the rebuttal period.
All that remained in evidence in support of the petition were (1) two STEALTH registrations, one that covered bicycles, motorcycles, and boats, and the other that covered various sporting goods, and (2) certain of Hunter’s responses to discovery, to the extent that they might be proper rebuttal to Hunter’s testimony.
The Board denied the cancellation petition with prejudice on October 3, 2002. It found that the petitioners had established first use of the STEALTH mark only with respect to bicycles, motorcycles, boats, and other sporting goods, but that there was no likelihood of confusion between those marks and the STEALTH mark used in connection with Hunter’s ceiling fans. The Board also found that the STEALTH mark was not merely descriptive or deceptively misdeseriptive of ceiling fans. The Board denied all of the petitioners’ other claims. The petitioners then filed a motion to disqualify one of the Board members and moved for reconsideration. The Board denied both of those motions.
DISCUSSION
Central first argues that the Board erred in refusing to consider most of the evidence in its four notices of reliance, stating that affidavits, sales records, and advertisements would “clearly be acceptable under the Federal Rules of Evidence.” That contention is incorrect. All such evidence is subject to the rules regarding authentication and hearsay evidence. With regard to authentication, the petitioners made no attempt to present *159 witnesses to authenticate the documents they were seeking to admit. The only attempt the petitioners made to authenticate any of their exhibits was through Hunter’s witness, who testified that he could not authenticate them. As for the petitioners’ affidavits, those documents were clearly hearsay and, absent agreement of the parties, were inadmissible during the testimony period. The Board provided the petitioners ample opportunity to present live testimony both to authenticate the documentary evidence and to avoid hearsay objections, but they did not do so.
Central also argues that the Board abused its discretion in applying “strict” procedural rules to the petitioners, such as excluding evidence offered late or by a nonparty, while being lenient with Hunter on deadlines earlier in the case. We find nothing in the record to indicate that the Board abused its discretion in these procedural matters. On the contrary, the Board acted well within its discretion in granting Hunter additional time to respond to the petition and requests for discovery, as Casablanca was in bankruptcy at the time of the initial petition and Hunter had only just acquired the trademark. It was within the Board’s discretion to deny the first motion for a default judgment, since the case was suspended by the petitioner’s own summary judgment motion. Likewise, it was not improper for the Board to deny the petitioners’ second motion for a default judgment, as there were sworn statements by Hunter that the parties had agreed to an extension of time for answering the amended petition, and on the other side only an unsworn allegation by the petitioners that Hunter’s representatives had perjured themselves. And it was within the Board’s discretion to exclude evidence that was filed late, evidence filed by a non-party, and evidence that did not conform to evidentiary standards. In short, we discern no abuse of discretion in the Board’s ruling and no pattern of inequity in the manner in which the Board disposed of the parties’ respective motions and evidentiary submissions.
Central next argues that Hunter’s evidence was insufficient to show use of the STEALTH trademark prior to the petitioners’ use or likelihood of confusion between the petitioners’ use of STEALTH on non-fan products and Hunter’s use of the mark on fans. Central misapprehends the burden of proof in so arguing.
A certificate of registration is prima facie evidence that the registered mark is valid, that the registrant is the owner, and that the registrant has the exclusive right to use the mark in commerce on or in connection with the goods and services specified in the registration. 15 U.S.C. § 1057(b). The petitioners therefore had the burden of establishing valid grounds for cancellation of Hunter’s mark. West Florida Seafood v. Jet Restaurants, Inc., 31 F.3d 1122, 1125 (Fed.Cir.1994). Because the only admissible evidence the petitioners presented consisted of registrations of the STEALTH mark for products other than fans and Hunter’s answers to discovery, the petitioners clearly failed to meet their burden of proof with respect to their asserted prior use of the mark on fans. Moreover, Hunter presented evidence that Casablanca had used the mark in a pilot sales program as early as January 1990. Hunter’s testimonial evidence was supported by packing boxes, labels, owner’s manuals, and other documentation. The Board thus reasonably concluded that the petitioners had failed to establish priority for the use of the STEALTH mark in connection with fans. Moreover, the Board properly concluded that there was no likelihood of confusion between the petitioners’ use of the mark on products other than fans, such as bicycles and boats, and Hunter’s use of the mark in connection *160 with ceiling fans, because the products were dissimilar and were sold in different channels of trade.
Central argues that even if the petitioners are not entitled to priority for the STEALTH mark on fans, the mark itself, as applied to fans, is merely descriptive or deceptively misdescriptive. Central argues that the STEALTH mark is meant to indicate the nature, shape, or function of the fan. The most common modern meaning of STEALTH is “furtiveness or slyness.” Webster’s Third New International Dictionary 2232 (1968). Those are not concepts that one would normally associate with a ceiling fan, and absent any admissible evidence offered by the petitioners to the contrary, the Board did not err in so holding. The word STEALTH is, at the very most, suggestive of the fan’s design or unique characteristics. The Board therefore properly rejected the petitioners’ argument that the mark was merely descriptive, and in light of the petitioners’ failure to put forth any admissible evidence as to why the use of the term STEALTH was deceptively misdescriptive, the Board was clearly correct to reject that argument as well.
Finally, Central argues that it was error for the board to require the petitioners’ pro se representative, Leo Stoller, to obtain leave of the Board before filing any further procedural motions, and to consider Mr. Stoller’s prior history with the Board in so doing. Again, we find no error or abuse of discretion in the Board’s action, nor is there any indication that the petitioners were prejudiced by that requirement.
Central contends that it was unclear what seeking “leave of the Board” meant, as such a procedure is not described in any of the Board’s rules. Central claims that the procedure outlined by the Board’s final order, which required Mr. Stoker to request permission to file a motion by supporting that request with an affidavit establishing good cause, was not “manifestly obvious.” Considering the frivolous nature of the motions filed by Mr. Stoker prior to the Board’s requirement for leave, and Mr. Stoker’s prior history with the Board, it was within the Board’s discretion to impose such a requirement. Further, a requirement that a party request leave of the Board before filing a motion is sufficiently clear that such an order is not required to be accompanied by detaked instructions as to how to comply.
In any event, the Board found that the motions Mr. Stoker filed for which leave was not granted were not persuasive, nor was any good cause shown as to why they should be considered. Central has not pointed to any reversible error in the denial of any of those procedural motions. Thus, the petitioners were not prejudiced by the Board’s leave requirement, and any error the Board may have committed in imposing that requirement was harmless.