THIS OPINION IS
A PRECEDENT OF
THE TTAB

Mailed: October 28, 2010

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Weatherford/Lamb, Inc.

v.

C&J Energy Services, Inc.

_____

Cancellation No. 92050101

_____

John C. Cain, Esq., of Wong, Cabello, Lutsch, Rutherford & Brucculeri, L.L.P. for Weatherford/Lamb, Inc.

Paul C. Van Slyke, Esq., of Locke, Lord, Bissell & Liddell, LLP for C&J Energy Services, Inc.

_____

Before Quinn, Wellington, and Ritchie,
Administrative Trademark Judges.

Opinion by Wellington, Administrative Trademark Judge:

Weatherford/Lamb, Inc. has petitioned to cancel Registration No. 3496546 for the mark FRAC-SURE (in standard characters) for services identified as, "Oil and gas well treatment services; oil and gas well fracturing services" in International Class 40.[1]

---

[1] Registration No. 3496546 issued on September 2, 2008, based on an allegation of first use anywhere and in commerce on November 19, 2007.

As the ground for cancellation, petitioner alleges priority of use and likelihood of confusion. Specifically, petitioner pleads that it is the owner of an application for the mark FRACSURE for "oil well fracturing [and] oil and gas treatment" services and that said application initially was suspended pending the final disposition of respondent's application that matured into the subject registration, and later refused based on that registration;[2] that petitioner has used its mark FRACSURE "in connection with offering its consumers well treatment and well fracturing services since at least as early as October 2003" and that it has priority of use vis-à-vis respondent and its mark; that "as a result of the use and promotional efforts of [petitioner], the FRACSURE mark has come to identify the services of [petitioner]"; and that respondent's registration is "an impediment to [petitioner's] registration of its mark FRACSURE."

Respondent filed an answer wherein it denied the salient allegations in the notice of opposition.

---

[2] Petitioner's application Serial no. 77474360 was filed on May 14, 2008, prior to issuance of respondent's registration; on February 18, 2010, the USPTO refused registration of petitioner's mark based on a likelihood of confusion with the then registered mark. Petitioner's application has since been suspended by the USPTO pending the outcome of this cancellation proceeding.

2

The Parties' Cross-Motions for Summary Judgment and
Accelerated Case Resolution (ACR)

On May 27, 2009, petitioner filed a motion for summary judgment on the pleaded ground of priority and likelihood of confusion.  In its motion, petitioner limited its argument to the issue of priority because "respondent's own admissions confirm the relatedness of the parties' services and that confusion is likely between the marks."  Brief, p. 5.

In response, respondent filed a motion for leave to take limited discovery, which was granted by the Board to the extent that petitioner was allowed time to respond to certain outstanding discovery requests already propounded by respondent.  Petitioner's discovery responses were served on respondent,[3] and respondent subsequently filed (on June 14, 2010) its opposition to petitioner's summary judgment motion and a cross-motion for summary judgment.  On June 17, 2010, respondent filed a "motion to strike" that essentially consists of evidentiary objections to certain materials submitted by petitioner in support of its summary judgment motion.

---

[3] Prior to serving its discovery responses, petitioner filed a motion for protective order requesting that it need only produce limited or "representative samples" of responsive documents.  A telephone conference between the assigned Board interlocutory attorney and the parties took place on May 4, 2010, and the motion was granted.  A Board order issued on May 6, 2010, summarizing the conference.

The cross motions for summary judgment and motion to strike were completely briefed by the parties.

Then, on August 26, 2010, respondent filed a copy of the parties' Stipulation for Application of Accelerated Case Resolution (ACR) in Resolving Parties' Cross-Motions for Summary Judgment. Specifically, the parties stipulated that the Board may "resolve this proceeding based on the parties' summary judgment submissions"; that the Board "may consider the parties' summary judgment submissions as the parties' final briefs"; and that the Board "may resolve any genuine issues of material fact, including the drawing of reasonable inferences from any such fact(s), presented by the parties' cross motions."

On August 31, 2010, the Board issued an order notifying counsel for both parties that the stipulation to resolve the instant proceeding by way of ACR was approved. To be entirely clear, our resolution of this proceeding is based on all submissions of the parties previously submitted in support of their briefing of the cross motions for summary judgment subject, of course, to respondent's objections to certain evidence discussed below. In other words, we do not view the parties' stipulation to have the merits of this case resolved via the Board's ACR procedure as including a waiver or withdrawal of respondent's previously briefed motion to strike. Had the parties intended us to consider

4

the cross motions for summary judgment and the merits of the case without regard to such motion, the stipulation would have so stated.[4]

Evidentiary Objections

In its motion to strike, respondent objects to certain portions of the declarations (or exhibits thereto) submitted by petitioner in support of its summary judgment motion. In essence, respondent's objections are attacks on the probative value of the statements in the declarations or the exhibits attached thereto. Respondent argues that certain statements and exhibits are either "argumentative" or "state a legal conclusion" or are "vague and conclusory" or "irrelevant." Respondent objects to some specific statements regarding petitioner's activities during certain years despite the declarant stating that he retired prior to

---

[4] Parties may confirm an agreement to proceed by ACR either by informing the Board interlocutory attorney assigned to the proceeding during a telephone conference or by filing a stipulation. In proceedings where there are pending motions or outstanding matters that do not necessarily go to the merits of the claims or issues to be resolved by ACR, the parties opting to use the ACR procedure must either address the status of the motions or matters in their stipulation, or conference with the interlocutory attorney in order to clarify the particular claims issues that are in dispute and which are being submitted to the Board for resolution by ACR.
 In general, the Board encourages parties to consider use of ACR and parties are required to discuss the possibility in their initial settlement and discovery planning conference. To promote discussion of ACR in that conference, or during any subsequent discussions about the use of ACR, the Board has posted Frequently Asked Questions (FAQs) and other material about ACR on its web page, to illustrate the flexibility of the process and various approaches to ACR that have been utilized in other cases. See: http://www.uspto.gov/trademarks/process/appeal/index.jsp

the years in question.  Ultimately, respondent requests that the objectionable evidence be stricken from the record.

In response, petitioner first objected to the timeliness of respondent's objections, noting that they were not raised earlier with respondent's Rule 56(f) motion, but were filed shortly after respondent filed its substantive response to petitioner's summary judgment motion. Petitioner nevertheless attempted to overcome the objections by filing amended declarations for two of the declarants.[5] Petitioner also argued the merits of the objections and the relevance of the cases cited by respondent in support of the objections.

Respondent did not address petitioner's amended declarations or otherwise address petitioner's responses to the objections.

We agree with petitioner that respondent's objections should have been raised promptly and not nearly one year after the evidentiary submissions were received.  However, since petitioner did have an opportunity to respond to the objections, and indeed did do so fully, we see no prejudice to petitioner; thus we exercise our discretion and will consider respondent's objections despite any tardiness.

---

[5] Petitioner attached (as Exhibits J and K) the amended declarations of Messrs. Gaspar and King to its response (filed on July 20, 2010).

As mentioned, respondent's objections are essentially arguments regarding the probative value of the objected-to statements and materials.  That is, respondent's objections do not address admissibility, but request the Board to strike the items of evidence because they have little or no value as evidence.  We decline to strike the evidence and choose to evaluate all of the declarants' statements and exhibits for appropriate probative value, and to weigh the evidence in its totality.  Further, we find the declarations (and attached exhibits) submitted by petitioner are admissible and in compliance with Fed. R. Civ. P. 56(e) and the Board's rules.  See TBMP § 528.05 (and subsections) (2d ed. rev. 2004).

## The Record

By operation of Trademark Rule 2.122, 37 C.F.R. §2.122, the record in this case consists of the pleadings and the file of the involved registration.  In addition, pursuant to the parties' ACR stipulation, the parties' summary judgment submissions are of record.

In support of its motion for summary judgment, petitioner filed the following:  the declaration of Mr. Barry B. Ekstrand, Global Director of Technologies with Weatherford US, LP, and attached exhibits; the declaration of Mr. Bob Gaspar, a former Senior Copywriter for a wholly-

7

owned subsidiary of petitioner, and attached exhibits; the declaration of Mr. Steve King, Sales and Technical Manager with a wholly-owned subsidiary of petitioner, and attached exhibits; a copy of a USPTO Office action suspending petitioner's pleaded application; a copy of respondent's response to petitioner's first set of admission requests; copies of respondent's responses to petitioner's first and second sets of interrogatories; and a copy of an invoice dated November 19, 2007. With its reply brief, petitioner filed amended declarations of Messrs. King and Gaspar.

In support of its cross motion for summary judgment, respondent filed a declaration of Thomas L. Casagrande, an attorney with the law firm representing respondent, with attached exhibits that include copies of representative invoices and proposals from petitioner, and a copy of a purported presentation made by petitioner, all produced by petitioner in response to discovery requests.

## Standing

Inasmuch as petitioner has made of record the USPTO Office action suspending its pleaded application pending the possible refusal to registration under Section 2(d) of the Lanham Act based on an alleged likelihood of confusion with respondent's registration,[6] there is no question that

---

[6] See footnote 2.

8

petitioner has standing to bring this petition for cancellation. *Cerveceria Modelo S.A. de C.V. v. R.B. Marco & Sons, Inc.,* 55 USPQ2d 1298, 1300 (TTAB 2000). See also, *Hartwell Co. v. Shane*, 17 USPQ2d 1569, 1570 (TTAB 1990); and TBMP § 309.03(b) (2d ed. rev. 2004).

Likelihood of Confusion

With respect to the issue of likelihood of confusion, we have, in making our determination, considered those factors set forth in *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973) which are relevant and for which there is evidence of record. However, we point out that likelihood of confusion is not in dispute in this proceeding. The parties are essentially in agreement that their respective marks and services are the same (or nearly so). Respondent has admitted that the parties' respective marks are "phonetically identical", "evoke[] identical commercial impressions", and "have the same connotation." Responses to Requests for Admissions Nos. 5, 6, 16. Respondent also admitted that the parties are "competitors in the oil and gas well treatment and fracturing services industry" and that "petitioner's customers of goods or services offered under petitioner's mark overlap with respondent's customers of goods or services offered under respondent's mark." Responses to

Requests for Admissions Nos. 17 and 20.  Our review of the record confirms these admissions.

Ultimately, we conclude there is a likelihood of confusion between the parties' nearly identical marks as used on their overlapping or identical oil and gas well services.  Accordingly, we proceed to the issue of priority.

## Priority

It is well settled that in the absence of any evidence of earlier use, the earliest date upon which respondent may rely is the filing date of the underlying application that matured into the subject registration.  *See* Trademark Act Section 7(c), 15 U.S.C. §1057(c).  *See also Larami Corp. v. Talk to Me Programs, Inc.,* 36 USPQ2d 1840 (TTAB 1995).  In this case, the application that matured into the registration at issue herein was accorded a filing date of February 28, 2007.  Inasmuch as respondent did not submit evidence demonstrating use of its mark FRAC-SURE prior to this constructive use date, this is the earliest date that it is entitled to rely on for purposes of priority.

Thus, in order for petitioner to establish priority and ultimately prevail in this proceeding, it must demonstrate that it used its pleaded mark FRACSURE in commerce prior to respondent's priority date.  See Trademark Act Section 2, 15 U.S.C. §1052 [to establish priority on a likelihood of

10

confusion claim brought under Trademark Act § 2(d), a party must prove that, *vis-a-vis* the other party, it owns "a mark or trade name previously used in the United States ... and not abandoned..."]. The prior use may, but need not, be technical trademark use. Indeed, a party may establish prior use through "use analogous to trademark use" which is non-technical use of a trademark in connection with the promotion of services "under circumstances which do not provide a basis for an application to register, usually because the statutory requirement for use on or in connection with the sale of goods [or services] in commerce has not been met." *Shalom Children's Wear Inc. v. In-Wear A/S*, 26 USPQ2d 1516, 1519 (TTAB 1993).

In the present case, petitioner relies on actual or technical use of its mark in commerce. When we are considering evidence of a party's alleged prior use in commerce, we must not look at only the individual pieces of evidence. Instead, we also must look at the total picture that the evidence presents.

> [W]hether a particular piece of evidence by itself establishes prior use is not necessarily dispositive as to whether a party has established prior use by preponderance. Rather, one should look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use.

*West Florida Seafood, Inc. v. Jet Restaurants*, 31 F.3d 1122, 31 USPQ2d 1660 at 1663 (Fed. Cir. 1994).

11

We note that respondent argues at great length in its brief that petitioner's pleaded mark, FRACSURE, is not inherently distinctive and, in order for petitioner to prevail, petitioner must show that "its use created 'secondary meaning' in the alleged mark" before respondent's priority date.[7] Brief, p. 1-2. Respondent contends that "[a]s petitioner uses it, FRACSURE is, at best a rarely-employed laudatory advertising slogan that does not indicate source." *Id.* at p. 2. Petitioner, on the other hand, argues that the parties' marks, FRACSURE and FRAC-SURE, are inherently distinctive and that proof of secondary meaning is not required to establish rights therein.

"Under the rule of Otto Roth, a party opposing [or seeking to cancel] registration of a trademark due to a likelihood of confusion with his own unregistered term cannot prevail unless he shows by a preponderance of the evidence that his term is distinctive of his goods, whether inherently or through the acquisition of secondary meaning or through 'whatever other type of use may have developed a trade identity.'" *Towers v. Advent Software Inc.*, 913 F.2d 942, 16 USPQ2d 1039, 1041 (Fed. Cir. 1990), *citing*, *Otto*

---

[7] In its brief, respondent incorrectly states that its filing date is November 19, 2007. However, this date is the date upon which respondent alleges that it first used its mark and, as noted in this decision, respondent may actually rely on the filing date of the application, i.e., February 28, 2007, which is earlier.

*Roth & Co. v. Universal Food Corp.*, 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981).

There are several problems with respondent's assertion that petitioner's mark, FRACSURE, is not inherently distinctive. First, respondent does not explain what specific laudatory meaning it attributes to petitioner's mark. To the extent that respondent is arguing that petitioner's pleaded mark is, on its face, a "laudatorily descriptive" term for the services rendered, there is no evidence in the record to support this. "Fracsure" is not found in the dictionary and the record does not establish that the term has a recognized meaning in the industry other than perhaps its suggestion of reliable oil well "fracturing" services. Accordingly, it appears on the record before us to be a coined term, albeit one that is evocative of the term fracture. Finally, we would be remiss if we did not point out that the subject registration, again for nearly an identical mark and services, issued based on the mark being presumptively inherently distinctive inasmuch as there is no claim of acquired distinctiveness. With the above in mind and based on the record before us, we conclude that petitioner's pleaded mark, FRACSURE, likewise is inherently distinctive.

Apart from labeling petitioner's mark "lauditorily descriptive," respondent also attacks petitioner's use of

13

its mark as "sporadic" and "not [as] a source identifier."
Brief, p. 4. To the extent that respondent is arguing that
petitioner's evidence of use does not amount to trademark
use or use analogous thereto, this is a fair argument. As
already noted, it is petitioner's burden in this case to
establish, by a preponderance of the evidence, that it has
prior use of its mark. We therefore turn to the evidence
that petitioner has submitted.

In his declaration, Mr. Ekstrand states that he is
Global Director of Technologies, Pumping and Chemical
Services for a subsidiary and related company of petitioner.
He further states that petitioner has "since October 2003
... continuously used its FRACSURE Mark in commerce in
connection with its advertising and offering of oil well
fracturing services and oil and gas well treatment services"
(paragraph 4); that "[i]n late 2002 or early 2003 and
continuing into 2005, I, along with other [petitioner]
personnel, developed the *Weatherford FracSure*$^{SM}$ *Technical
Handbook*" (paragraph 7, copy of handbook attached as Exhibit
A1); that the purpose of the handbook was to "introduce
potential customers to [petitioner's] services" and to
"provide customers and potential customers of [petitioner's]
services with practical information that is useful in the
well fracturing process..." (paragraph 8); that in
"approximately December 2005 or January 2006, [petitioner]

14

ordered 3,000 copies of the *FracSure<sup>SM</sup> Technical Handbook* from Grover Printing. A true and correct copy of the invoice...is attached" (paragraph 9, copy of invoice attached as Exhibit A2); and that "to date, [petitioner has] distributed more than 2,300 copies of [the handbook] to its customers or potential customers in connection with the advertising and performance of its FRACSURE services" (paragraph 10); and that petitioner distributed a "Weatherford WellNess Profile" brochure to approximately 187 employees of BP, one its customers, in 2004" (paragraph 11, copy of brochure attached as Exhibit A3). The mark appears in the brochure in the following manner:



FracSure™ Fracturing and Stimulation Service: One Weatherford goal is to set a new benchmark in hydraulic fracturing services by answering the industry's call for high-quality service and efficiency in conjunction with a focus on advanced technology. The addition of the new Fracturing Technologies product line rounds out the company's core service offerings. Fracturing and stimulation capabilities cover everything from very high-pressure jobs to those requiring sophisticated chemistries, such as the DynaFrac™ and MagnumFrac™ fluid systems.

*Weatherford stimulation crews are staffed with operators who are experts in blending fluids on location.*

Mr. Steve King, a U.S. Region, Sales and Technical Manager with a wholly-owned subsidiary and related company of petitioner, corroborates much of Mr. Ekstrand's testimony regarding the services that petitioner renders and the "FracSure Technical Handbook."[8] Specifically, he states that "while Mr. Barry Ekstrand was developing [the handbook]

---

[8] All references are to Mr. King's declaration, as amended.

15

in 2003, I created a list of individuals to whom I anticipated distributing a copy" (paragraph 4, copy of Mr. King's "preliminary list of intended recipients" is attached as Exhibit G1); that "after [petitioner's handbook" was printed, [petitioner's] personnel, including myself, began distributing copies of the handbook to [petitioner's] customers and potential customers" (paragraph 5); that he initially "kept a list of the individuals to whom [he] distributed a copy of the handbook" and a copy of that list is attached as Exhibit G2; that petitioner's personnel use the handbook when communicating information to the customer and the handbook is "a lead document that we use in rendering well fracturing services" (paragraphs 7-8); and that he has used the handbook "in front of [petitioner's] customers at least a hundred times" (paragraph 10).

Finally, Mr. Bob Gaspar states that he is a former (retired in 2007) "senior copywriter" for a wholly-owned subsidiary and related company of petitioner and currently is a consultant to petitioner, "writing advertisements and sales brochures for petitioner to the present day." (Paragraph 2). He avers that he "created the name FRACSURE and brainstormed ways to used the FRACSURE Mark in [petitioner's] marketing and advertising materials at least ten months prior to [petitioner's] first use of the Mark in October 2003" (paragraph 5) and that Exhibit B2 represents

16

"internal emails and other documents relating to [petitioner's] advertising strategies for its FRACSURE mark; that "on October 13, 2003, [petitioner] first published and distributed brochures advertising its FRACSURE services" and that Exhibit B1 is a "true and correct copy of one such Brochure." (paragraph 4). Mr. Gaspar attested to the authenticity of other brochures and materials (attached as exhibits to his declaration) used by petitioner prior to February 28, 2007.

The cumulative effect of the aforementioned declarations (with attached exhibits) establishes petitioner's claim of prior use. That is, the totality of the evidence shows that petitioner used the mark FRACSURE in connection with its oil and gas well treatment services prior to February 28, 2007. *West Florida Seafood*, 31 USPQ2d at 1663. In the exhibits to the declarations, there are clear examples of petitioner's prior use of the mark FRACSURE (appearing as "FracSure") being used in connection with oil and gas well services. While the housemark WEATHERFORD or generic wording appears frequently with petitioner's mark FRACSURE, this does not detract from the source-identifying nature of the mark. It is well settled that a party may use more than one mark to identify a product or service and thus may choose to use its housemark in conjunction with other marks. Furthermore, use of a mark

17

in conjunction with descriptive or generic terms, even nouns, does not render the mark a mere laudatory adjective.

Respondent has attacked petitioner's evidence based on petitioner's limited examples of use of the mark and the absence of any evidence showing petitioner used the FRACSURE mark on invoices or proposals, all in spite of petitioner's substantial revenue involving its oil and gas well services. Although respondent is correct in many respects that petitioner's evidence of use is limited, this does not mean that such use is so insubstantial that it cannot be considered use in commerce or that it cannot be reasonably inferred that there has been a public association with the mark FRACSURE and petitioner's services. To the contrary, we find the evidence of petitioner's prior use to be sufficient for purposes of establishing use in commerce of the mark FRACSURE in connection with oil and gas well services, and that such use occurred prior to February 28, 2007. Ultimately, petitioner has proven priority.

In sum, we find that petitioner has shown by a preponderance of the evidence that there is a likelihood of confusion between the parties' respective marks and services, and that petitioner has also prior use of its mark.

**DECISION**:  The petition for cancellation is granted, and respondent's registration (No. 3496546) will be cancelled in due course.