THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing:
08/23/06                                        Mailed:  1/11/07

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

Kohler Co.
v.
Baldwin Hardware Corporation
_____

Cancellation No. 92041434
_____

Scott W. Johnson, Gregory C. Golla and Kristine M. Boylan of
Merchant & Gould for Kohler Co.

Kristin L. Murphy and Michelle L. Visser of Rader, Fishman &
Grauer for Baldwin Hardware Corporation.
_____

Before Quinn, Hohein and Kuhlke, Administrative Trademark
Judges.

Opinion by Quinn, Administrative Trademark Judge:

Kohler Co. has petitioned to cancel the registration

owned by Baldwin Hardware Corp. for the mark DEVONSHIRE for

"metal door hardware, namely locks, latches and knobs."[1]

As grounds for cancellation, petitioner alleges that

respondent's mark, when used in connection with respondent's

goods, so resembles petitioner's mark DEVONSHIRE, previously

used in connection with various plumbing products and

---

[1] Registration No. 2267737, issued August 3, 1999; Section 8
affidavit accepted.

fixtures, as to be likely to cause confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). More specifically, petitioner asserts that it is the owner of the mark DEVONSHIRE for toilets and lavatories, and that the mark has been used in connection with these goods since 1996. Further, petitioner claims use of its mark in connection with "bathtubs; whirlpool baths; showers; shower and bath cubicles; lavatories with toilets; toilet seats; sinks; water taps for pipes; faucets; fixed bath spouts on walls and directly on the baths, basins, and sanitary apparatus and installations, namely, pipes being part of sanitary facilities."[2]

Respondent, in its answer, denies the salient allegations in the petition for cancellation.

The record consists of the pleadings; the file of the registration sought to be cancelled; trial testimony, with related exhibits, taken by each party; a letter stipulated into evidence; a status and title copy of petitioner's Registration No. 2799158, and a portion of the file history of this registration, respondent's responses to certain

---

[2] In the petition for cancellation, petitioner pleaded ownership of application Serial No. 78098179, by which it sought to register the mark DEVONSHIRE for the goods listed above. Petitioner further asserted that its application was refused registration under Section 2(d) on the basis of respondent's registration. The refusal subsequently was withdrawn, and the application matured into Registration No. 2799158 on December 23, 2003. The registration sets forth dates of first use of July 1996.

discovery requests, copies of registrations (other than the one involved herein) owned by respondent, and copies of third-party registrations, all introduced by way of petitioner's notice of reliance; and copies of seven design patents, made of record in respondent's notice of reliance. The parties have filed briefs,[3] and both parties were represented by counsel at an oral hearing held before the Board.

## The Parties

Petitioner is a designer, manufacturer and marketer of kitchen and bath products. Petitioner has used its mark DEVONSHIRE in connection with a variety of toilets and lavatories, as well as with replacement parts for such products. Certain portions of the record have been marked "confidential," so we are unable to disclose specific sales and advertising numbers. Suffice it to say, however, that petitioner has enjoyed significant success with its DEVONSHIRE branded products, and petitioner has actively promoted its products under the mark.

---

[3] Petitioner, in its brief, has asserted that there are two issues in this proceeding, namely priority and likelihood of confusion. (Brief, p. 3). In spite of this statement, petitioner later argued in its brief that the involved registration should be cancelled on the additional ground of fraud. Fraud was not pleaded, and this is the first time that petitioner has raised such ground. As correctly noted by respondent, the parties have not tried the claim, either implicitly or explicitly, and raising the claim for the first time in the brief is manifestly untimely. Accordingly, petitioner's belated fraud claim will be given no further consideration. TBMP §314 (2d ed. rev. 2004).

Respondent manufactures and sells a wide variety of decorative hardware products, including door hardware, lighting and bath accessories. Among its products sold under the mark DEVONSHIRE are premium, high-end handle sets, made of 100% solid brass, used on exterior doors. Because the handle sets are expensive, they are used primarily in new construction or remodeling jobs; the goods are not geared to the replacement market.

## Evidentiary Objections

Respondent has filed a motion to strike and, in its brief at final hearing, respondent has raised numerous objections to petitioner's testimony and evidence.

Petitioner, for its part, raised objections in its reply brief to portions of respondent's testimony.

We first turn our attention to respondent's motion to strike certain exhibits submitted by petitioner in its notice of reliance, namely documents produced by respondent during discovery. We agree with petitioner's assessment of this evidentiary dispute. Respondent availed itself of Fed. R. Civ. P. 33(d) in responding to petitioner's interrogatories; that is, respondent provided documents in response to certain of petitioner's interrogatories. Further, inasmuch as respondent admitted that the documents it produced in response to petitioner's discovery requests were true and correct copies of authentic documents

4

(response to Request for Admission No. 28), they are admissible by way of a notice of reliance. Trademark Rule 2.120(j)(3)(i); and TBMP § 704.11 (2d ed. rev. 2004). In view of respondent's reliance on Fed. R. Civ. P. 33(d), its admission of the authenticity of the documents, and the lack of any identification as to which specific documents were responsive to which specific interrogatory, we find that petitioner's introduction of these documents by its notice of reliance is permissible.[4]

Accordingly, respondent's motion to strike is denied, and the exhibits at issue in petitioner's notice of reliance have been considered.[5]

We next turn to petitioner's objections. Petitioner, in its main brief, is silent as to any objections to respondent's testimony or evidence that it might have wanted to maintain. In petitioner's reply brief, however, petitioner raises nine separate objections, all grounded on hearsay.

In order to preserve an objection that was seasonably raised at trial, a party should maintain the objection in its brief on the case. See Hard Rock Café International

---

[4] If a party producing documents in lieu of interrogatory responses intends only particular documents among many that are produced to be considered as responsive to particular interrogatories, it must be specific in its responses.
[5] We hasten to add that, even if these exhibits were stricken and not considered, the result on the merits of this case would be the same.

(USA) Inc. v. Elsea, 56 USPQ2d 1504, 1507 n.5 (TTAB 2000) [objection to exhibit raised during deposition but not maintained in brief is deemed waived]; and Reflange Inc. v. R-Con International, 17 USPQ2d 1125, 1126 n.4 (TTAB 1990) [objections to testimony and exhibits made during depositions deemed waived where neither party raised any objection to specific evidence in its brief]. See also TBMP § 707.03(c)(2d. ed. rev. 2004).

Because petitioner did not maintain its objections in its main brief on the case, we deem the objections to be waived. Petitioner cannot be allowed to wait until its reply brief to maintain any objections; to allow this would effectively foreclose respondent from responding to the objections.

Accordingly, we have considered all of respondent's testimony and evidence, according it whatever probative weight it merits.

As alluded to above, respondent, in its brief, filed twenty-four separate objections to specific testimony and exhibits introduced by petitioner. (Brief, pp. 42-45). Petitioner has responded to the objections. (Reply Brief, appendix A-1 through A-10).

Respondent's objections are based, in the main, on hearsay, lack of personal knowledge of the witness, lack of authentication of the documents, violation of the best

evidence rule, and that certain testimony was obtained by leading questions. The bulk of these objections pertain to testimony that is hardly outcome determinative of the merits of this case; moreover, the nature of these objections largely overlaps with other objections that are made to outcome determinative testimony and exhibits (see discussion, infra). Thus, we see no compelling reason to painstakingly go through all of the objections one by one except insofar as they relate to the outcome determinative testimony and evidence. Suffice it to say that we have considered all of petitioner's testimony and exhibits, keeping in mind respondent's objections to certain portions of the record. We have accorded whatever probative value the testimony and evidence merits.

Notwithstanding the above, we will specifically rule on certain objections to testimony and exhibits as they relate to priority. Thus, we focus our attention on respondent's objections to exhibit nos. 1, 2, 3, 26 and 27, and Mr. Chandler's testimony relating thereto. (Respondent's Brief, pp. 13-18).

With respect to exhibit nos. 1, 2, 3, 26 and 27, respondent objects thereto on the grounds that they constitute hearsay with no applicable exception; and that Mr. Chandler lacks personal knowledge to verify the information contained in the documents. In addition, with

respect to exhibit nos. 26 and 27, respondent also objects on the grounds that the documents lack authentication, that they violate the best evidence rule, and that petitioner did not produce these documents during discovery even though they were sought by way of respondent's discovery requests.

We have carefully considered the arguments of the parties, and we overrule respondent's objections essentially for the comprehensive reasons set forth by petitioner in response to the objections. We agree with petitioner that the documents and related testimony are not inadmissible hearsay, but rather qualify under the business records exception pursuant to Fed. R. Evid. 803(6). Further, we find that Mr. Chandler has sufficient personal knowledge to authenticate the information contained therein. As made clear by his testimony, Mr. Chandler began his employment with petitioner in May 1997 (prior to the earliest date upon which respondent relies) and, when testifying in this case, was very familiar with the DEVONSHIRE brand of products of petitioner and the related entity referred to as the Sterling Company.[6] And the related exhibits were generated in the course of regularly conducted business activities.

---

[6] Mr. Chandler testified, without giving any specifics, that Sterling Company "is a company owned by Kohler Company." (Chandler dep., pp. 5, 11). Exhibit nos. 1-3 indicate that Sterling is "a Kohler company." Petitioner, in its brief, refers to Sterling as its "subsidiary." (Reply Brief, p. 9).

8

See Transamerica Financial Corp. v. Trans-American Collection, 197 USPQ 43, 45 at n. 6 (TTAB 1977).

Insofar as respondent objected to exhibit nos. 26 and 27 on the basis that they violate the best evidence rule, petitioner states that "records before 1999 are not in a form obtainable by Kohler because of a change in accounting software." (Brief, p. 16). Inasmuch as the original sales volume documents are not obtainable in their original form, petitioner cannot be expected to produce the originals. Thus, these two exhibits, compilations of sale figures set forth in documents that are not originals, are acceptable. Fed. R. Evid. 1004(2).

Respondent also contends that exhibit nos. 26 and 27 were not produced during discovery, despite the fact that, according to respondent, it specifically requested such information and documents. Respondent asserts that it specifically requested all information and documents relating to sales of products under the DEVONSHIRE mark, and Kohler failed to produce these documents. Respondent further asserts that these documents were not created until May 28, 2004 as witnessed by the date on the face of the documents, and that these documents do not contain a document production number, as do petitioner's other exhibits. Respondent points to an exchange between counsel during the deposition of Mr. Chandler regarding respondent's

9

claim of non-production, resulting in petitioner's statement that "you [i.e., respondent's counsel] never asked for the underlying documents."  Respondent's counsel claimed that "[w]e put [petitioner's counsel] on notice that we asked for the sales information, specifically sent you a follow-up letter asking about them, and you didn't produce them, so I'm just making my objection."  Petitioner's counsel responded, "I understand."  (Chandler dep., pp. 54-55).

Petitioner contends that respondent did not file a motion to compel production of such documents, and that the documents were made available to respondent so as to allow cross-examination during Mr. Chandler's testimony.

Based on the record before us, we cannot say with any degree of certainty that respondent specifically asked for these documents and that petitioner did not produce them. This is so because respondent has not identified the specific interrogatory and/or request for production of documents (and petitioner's response thereto) that purportedly encompass exhibit nos. 26 and 27; had respondent furnished the Board with a copy of the relevant discovery request and petitioner's response thereto, it would be possible to say one way or the other whether petitioner lived up to its discovery obligations.  Thus, in the absence of the specific discovery request and response at issue, we cannot judge whether these documents were encompassed by

respondent's discovery requests.  See TBMP § 527.01(e) (2d ed. rev. 2004).[7]

Accordingly, exhibit nos. 1, 2, 3, 26 and 27, and Mr. Chandler's testimony relating thereto, have been considered.

### Preliminary Remarks

The present proceeding is governed by the principles set forth by our primary reviewing court, the U.S. Court of Appeals for the Federal Circuit.  A party claiming prior use of a registered mark may petition to cancel the registration on the basis of such prior use pursuant to Section 14 of the Trademark Act, 15 U.S.C. § 1064.  West Florida Seafood Inc. v. Jet Restaurants Inc., 31 F.3d 1122, 31 USPQ2d 1660, 1662 (Fed. Cir. 1994).  Petitioner, as the party seeking cancellation, must prove its claim for relief by a preponderance of the evidence.  Department of Justice, FBI v. Calspan Corp., 578 F.2d 295, 198 USPQ 147, 151 (CCPA 1978).

Furthermore, the party petitioning to cancel a federally registered trademark must plead and prove that it has standing and that there is a valid ground for the cancellation of the registration.  Young v. AGB Corp., 152

---

[7] So as to be clear, contrary to the apparent position of petitioner, a party need not necessarily file a motion to compel before it can seek to invoke the estoppel sanction, see TBMP § 527.01(e) (2d ed. rev. 2004), that may be warranted when the party's adversary failed to timely produce properly requested documents.

11

F.3d 1377, 47 USPQ2d 1752, 1754 (Fed. Cir. 1998) ("Section 14 has been interpreted as requiring a cancellation petitioner to show (1) that it possesses standing to challenge the continued presence on the register of the subject registration and (2) that there is a valid ground why the registrant is not entitled under law to maintain the registration") [internal quotation marks omitted].

## Standing

Petitioner, through its testimony and related exhibits, has established with respect to its claim of priority of use and likelihood of confusion that it uses the mark DEVONSHIRE in connection with toilets and lavatories. There is thus no issue with respect to petitioner's having proven its standing to bring the petition for cancellation.

## Priority

The first key issue in this case is the question of priority of use.

Respondent's underlying application for the involved registration was filed on December 11, 1997. Respondent acknowledges that it neither alleged nor proved a date of first use earlier than this date. We agree and petitioner does not contend otherwise; thus, the operative date of respondent's first use for purposes of this priority dispute is December 11, 1997. Section 7(c) of the Trademark Act, 15

12

U.S.C. § 1057(c).  See Brewski Beer Co. v. Brewski Brothers

Inc., 47 USPQ2d 1281, 1284 (TTAB 1998).

Regarding petitioner's use of its mark:

> To establish priority, the petitioner
> must show proprietary rights in the mark
> that produce a likelihood of confusion.
> These proprietary rights may arise from
> a prior registration, prior trademark or
> service mark use, prior use as a trade
> name, prior use analogous to trademark
> or service mark use, or any other use
> sufficient to establish proprietary
> rights.

Herbko International Inc. v. Kappa Books Inc., 308 F.3d

1156, 64 USPQ2d 1375, 1378 (Fed. Cir. 2002) [citation

omitted].

Michael Chandler, petitioner's Director of Sanitary

Marketing, has been employed by petitioner since May 1997.

Mr. Chandler testified about petitioner's continuous use of

the mark DEVONSHIRE on toilets and lavatories, commencing in

1996, as follows:

> Do you know when Kohler first used the
> term Devonshire as a trademark?
>
> 1996 the Sterling Company, which is a
> company owned by Kohler Company
> introduced an ensemble of products under
> the Devonshire name that included a two-
> piece toilet, two different sized
> pedestal lavatories and a drop-in
> lavatory, and when they took it to
> market, they used the Devonshire brand
> name.
>
> And how do you know this?
>
> I personally know this, when I started
> at Kohler in May of '97 one of the first

13

projects I worked on was for the vice president of fixtures marketing on the Kohler brand side, and he was working jointly with his counterpart in Sterling who also was the vice president of marketing, and they were analyzing price points across the line and trying to make sure we had the right continuity, and I did a tremendous number of charts and graphs for them whereby I became familiar with not only the Kohler line of products, but I also became familiar with the Devonshire and Sterling line of products.

And do you have personal knowledge of Kohler's use of the Devonshire mark on these products in 1997?

Sure I do.

And are you aware of whether or not the mark was being used on these products prior to 1997?

Yes, I do.  On a regular basis in what we do, we analyze the different products, we look at their volumes year to year, we look at prices, and in the normal course of business for the product manager on the Kohler brand side I regularly would see the volume reports, see a lot of different information being generated on the Sterling brand side.  I attended trade shows that they also attended, saw their product on display, saw you know the use of the trademark name, Devonshire in catalogs of theirs, you know saw it at trade shows as the product was being promoted.

(Chandler dep., pp. 5-7).

In connection with his above testimony, Mr. Chandler identified a product brochure (copyright date of 1996) featuring toilets and lavatories marketed under the mark

14

DEVONSHIRE (ex. no. 1), and two 1997 pricing catalogs (copyright dates of 1997, with the second catalog also showing prices "effective March 1, 1997") for DEVONSHIRE brand products (ex. nos. 2-3).  These exhibits show a variety of toilets and lavatories available for sale under the DEVONSHIRE mark.[8]  Mr. Chandler testified that the documents were created in the ordinary course of petitioner's business; further, according to Mr. Chandler, most of petitioner's literature is generated in-house, so Mr. Chandler stated it is likely that the exhibits were generated at petitioner's headquarters in Kohler, Wisconsin.

Specifically, with respect to exhibit no. 1, Mr. Chandler testified as follows:

> [A] document like this would be used by
> Sterling when they're displaying the
> product at trade shows, when they find
> potential customers with interest, a
> handout for plumbers, people who work in
> showrooms, wholesale distributors,
> builders, architects, designers,
> consumers.  You will have consumers at
> the trade shows.  Provide a lot of this
> literature to the sales force as they're
> making their sales calls.

(Chandler dep., p. 9).  This testimony confirms that exhibit no. 1 was used as a point-of-purchase display associated with the goods.

Mr. Chandler, while not personally involved in

---

[8] These exhibits prominently state that Sterling is "a Kohler company."

preparing exhibit no. 1, states that it was created in 1996:

"Based on the publication date, based on discussions I've had with members of the Sterling product management group and also with Kohler product management group, and also seeing it being used and handed to customers in 1997 and beyond." (Chandler dep., p. 69).

Mr. Chandler also testified about exhibits 2 and 3:

> Just like we do on the Kohler side, they [Sterling] would provide their pricing to all their customers, who would include wholesale plumbing distributorships, it would include people working in wholesale showrooms, it would include outside sales representatives of those wholesalers, their own sales force, be it dedicated or hired manufactured representatives. And this information obviously would flow to kitchen and bath dealers, which would be two step distribution.

(Chandler dep., p. 12). Mr. Chandler went on to testify that he first encountered the pricing catalogs (ex. nos. 2 and 3) in 1997, and that he used the pricing catalogs "many times." (Chandler dep., p. 15). Mr. Chandler indicated "as I mentioned before, the first 13 months I worked at Kohler I was an intern, I did all kinds of projects, and it was very routine for me to have to refer to not only Kohler branded product catalogs, but also the Sterling catalog, so I'm very familiar with having to go through here and add up all the different prices...so many, many times I took those numbers and typed them into spreadsheets." (Chandler dep., p. 14).

According to Mr. Chandler, exhibit 3 is just a longer version of exhibit 2. Mr. Chandler indicated that his own regular business duties included analyzing product catalogs and price lists such as the ones submitted during his testimony.

Additional exhibits introduced during his testimony further corroborate Mr. Chandler's testimony regarding petitioner's first use of the mark through Sterling Company, "a Kohler company." Exhibit no. 26 shows the number of units of DEVONSHIRE brand toilets and lavatories sold in 1996. (Chandler dep., pp. 62-64). Exhibit no. 27 shows the number of units of DEVONSHIRE brand toilets and lavatories sold in 1997. (Chandler dep., pp. 64-66).[9]

Mr. Chandler testified that he has personal knowledge of the sales history of the DEVONSHIRE product line and that, in May 1997, he was involved in a special project involving the line. (Chandler dep., pp. 55 and 57). Mr. Chandler concedes, however, that he did not witness any consummated sales of DEVONSHIRE brand products, and his

---

[9] We note that exhibit no. 26, while showing sales for 1996, does not show sales for 1997; the document also sets forth projected sales for the years 1998-2004. Exhibit no. 27 does not set forth sales figures for 1996, but rather begins with sales figures in 1997, continuing through September 2001. This "inconsistency" for the years 1996 and 1997 in the two documents is largely unexplained, although when considered together, they show sales of the goods under the mark in 1996 and 1997. We are not able to set forth the specific sales figures inasmuch as they are designated "confidential." Suffice it to say, however, that the sales are hardly de minimis in number.

principal source of knowledge about any sales in 1996 and 1997 are internal documents.

These internal documents include exhibit nos. 26 and 27. Exhibit no. 26, showing sales of DEVONSHIRE brand toilets and sinks in 1996, is a document that, according to Mr. Chandler, "would have been then created prior to 1998," and that the document "came out of my personal files this morning." (Chandler dep., p. 63). Mr. Chandler further identified the individual who prepared the document as his former boss, and that "I'm responsible for what he was once responsible for, and I went into our archives and pulled this information this morning, and that's why you see the May 28, 2004 print date at the bottom." Mr. Chandler confirmed that the document accurately reflects the sales of DEVONSHIRE brand products in 1996. (Chandler dep., p. 64).

Exhibit no. 27 is a similar document, this one created at the direction of Mr. Chandler. This document, a compilation of sales figures for a variety of petitioner's products, including DEVONSHIRE brand products, shows sales of DEVONSHIRE toilets and lavatories in 1997 through September 2001.

Over the years, petitioner's sales under the DEVONSHIRE mark have continued to expand, and the brand has been extended to other bathroom products and accessories. Later

18

years found petitioner selling bathroom shower doors, and hardware for bathroom vanities, including knobs and latches.

There is also testimony about petitioner's annual attendance at trade shows at which petitioner promoted its DEVONSHIRE brand products. The trade shows include the International Builders Show and the Kitchen and Bath Show that are, according to Mr. Chandler, the two largest shows in the North American market for plumbing products. Mr. Chandler testified that "I've seen, yes, I've seen Devonshire on display in the Sterling booth in '97 and '98, and then I saw it on display at the Kohler booth in 2000, 2001, 2002, 2003 and this year in 2004. And during that period of time it has been a primary product and collection focus for us." (Chandler dep., pp. 30-31). Further, Mr. Chandler participated in sales calls in 1997, and he "witnessed discussions in the Sterling booth in 1997, customers talking about the Devonshire suite and their interest to buy those products." (Chandler dep., p. 58).

Oral testimony, even of a single witness, if "sufficiently probative," may be sufficient to prove priority. Powermatics, Inc. v. Glebe Roofing Products Co., 341 F.2d 127, 144 USPQ 430 (CCPA 1965); and 4U Co. of America, Inc. v. Naas Foods, Inc., 175 USPQ 251 (TTAB 1972). In the present case, Mr. Chandler's testimony is not "characterized by contradictions, inconsistencies and

indefiniteness," but rather carries with it "conviction of its accuracy and applicability."  B.R. Baker Co. v. Lebow Bros., 150 F.2d 580, 66 USPQ 232 (CCPA 1945).  Further, the oral testimony is buttressed by the documentary evidence; most significantly, exhibit nos. 1, 2, 3, 26 and 27.  See Elder Mfg. Co. v. International Shoe Co., 194 F.2d 114, 92 USPQ 330 (CCPA 1952).

At this point, we take into consideration the Federal Circuit's admonition when we are determining dates of use for priority purposes:

> The TTAB concluded that each piece of evidence individually failed to establish prior use.  However, whether a particular piece of evidence by itself establishes prior use is not necessarily dispositive as to whether a party has established prior use by a preponderance.  Rather, one should look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use.  The TTAB failed to appreciate this.  Instead, the TTAB dissected the evidence to the point that it refused to recognize, or at least it overlooked, the clear interrelationships existing between the several pieces of evidence submitted.  When each piece of evidence is considered in light of the rest of the evidence, rather than individually, the evidence as a whole establishes by a preponderance that West used the "FAST EDDIE'S" mark prior to Jet's admitted first use of the mark.

West Florida Seafood, 31 USPQ2d at 1663.

Similarly, when we consider all the pieces of the puzzle relating to petitioner's first use of its mark

20

DEVONSHIRE on toilets and lavatories, we conclude that petitioner has established a priority date as early as the end of 1996, and certainly earlier than respondent's priority date. Mr. Chandler's credible testimony, coupled with corroborating evidence, satisfies petitioner's burden of proof in showing, by a preponderance of the evidence, that it has priority of use.

### Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). The relevant du Pont factors in the proceeding now before us are discussed below.

### The Marks

The marks in this proceeding are identical in sound, appearance, meaning and commercial impression, both marks being DEVONSHIRE in standard character form. Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005).

This factor heavily favors petitioner.

### The Goods

Petitioner's main point is that respondent's identification of goods in its registration, "metal door hardware, namely, locks, latches and knobs," is

unrestricted, that is, it is not limited to exterior door hardware. Thus, petitioner contends, the identification encompasses bathroom door hardware, bathroom cabinet door hardware and shower door hardware. In response, respondent states the following: "While [respondent] has used its DEVONSHIRE mark only for exterior door handle sets, [respondent] agrees that the Board must evaluate the registrability of [respondent's] mark, as set forth in its registration. However, [respondent's] metal door hardware, even assuming the goods are as broad as [petitioner] suggests, is not similar or related to toilets and pedestal lavatories." (Brief, p. 31).

Petitioner further contends that bathroom products and door hardware are related because they are found in the same area of the house, namely the bathroom; that bathroom products and door hardware are complementary in that they may be used together given the way they are marketed by the parties; that petitioner and respondent each offer both bathroom products and door hardware products, sometimes under the same mark; that numerous third-party entities sell both bathroom products and door hardware under the same mark; and that door hardware is within the zone of natural expansion of petitioner's toilets and lavatories.

Respondent counters by arguing that any similarities between the goods are outweighed by the clear differences

between petitioner's toilets and lavatories and respondent's door hardware.

With respect to the goods, it is well established that the goods of the parties need not be similar or competitive, or even offered through the same channels of trade, to support a holding of likelihood of confusion. It is sufficient that the respective goods of the parties are related in some manner, and/or that the conditions and activities surrounding the marketing of the goods are such that they would or could be encountered by the same persons under circumstances that could, because of the similarity of the marks, give rise to the mistaken belief that they originate from the same source. See Hilson Research, Inc. v. Society for Human Resource Management, 27 USPQ2d 1423 (TTAB 1993); and In re International Telephone & Telephone Corp., 197 USPQ 910, 911 (TTAB 1978). The issue, of course, is not whether purchasers would confuse the goods, but rather whether there is a likelihood of confusion as to the source of the goods. In re Rexel Inc., 223 USPQ 830 (TTAB 1984).

In analyzing this particular factor in the present case, it is of significant importance that the issue of likelihood of confusion must be determined on the basis of respondent's goods as they are set forth in the involved registration, rather than in light of what the goods

actually are as shown by any extrinsic evidence. See, e.g., Octocom Systems Inc. v. Houston Computer Services Inc., 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990); Canadian Imperial Bank of Commerce, N.A. v. Wells Fargo Bank, 811 F.2d 1490, 1 USPQ2d 1813, 1815-16 (Fed. Cir. 1987); CBS Inc. v. Morrow, 708 F.2d 1579, 218 USPQ 198, 199 (Fed. Cir. 1983); and Squirtco v. Tomy Corp., 697 F.2d 1038, 216 USPQ 937, 940 (Fed. Cir. 1983). Thus, where the goods in an involved registration are broadly identified as to their nature and type, such that there is an absence of any restrictions as to the channels of trade and no limitation as to the classes of purchasers, it is presumed that in scope the identification of goods encompasses all the goods of the nature and type described therein, that the identified goods are offered in all channels of trade which would be normal therefor, and that they would be purchased by all potential buyers thereof. Paula Payne Products Co. v. Johnson Publishing Co., 473 F.2d 901, 177 USPQ 76 (CCPA 1973); Kalart Co. v. Camera-Mart, Inc., 258 F.2d 956, 119 USPQ 139 (CCPA 1958); and In re Elbaum, 211 USPQ 639 (TTAB 1981).

In comparing the goods, we initially note that where identical marks are involved, as is the case here, the degree of similarity between the parties' goods that is required to support a finding of likelihood of confusion

declines.  In re Shell Oil Co., 992 F.2d 1204, 26 USPQ2d 1687, 1688-1689 (Fed. Cir. 1993); Time Warner Entertainment Co. v. Jones, 65 USPQ2d 1650 (TTAB 2002); and In re Opus One Inc., 60 USPQ2d 1812 (TTAB 2001).

In light of the above constraints in making our analysis, we find that petitioner's toilets and lavatories, when compared with respondent's "metal door hardware, namely locks, latches and knobs," are sufficiently related that, when sold under identical marks, there is likely to be confusion among purchasers in the marketplace.

As contended by petitioner, and readily acknowledged by respondent, the identification of goods in the registration sought to be cancelled must be construed to encompass metal door hardware, namely locks, latches and knobs of all types. Thus, the identification is construed to include hardware for shower doors, bathroom doors, and bathroom cabinet doors.  When viewed as such, the goods are related in that they are found in the same area of a home, that is, the bathroom.  But, the relatedness does not end there.

As shown by the record, the goods may be viewed as complementary in that they may be used together; that is to say, some consumers, when buying a line of products for their bathroom, want their toilet, sink, shower door, bathroom door and cabinet fixtures to all match or at least be coordinated.  Mr. Chandler testified that it is "very

common" in the industry for entities (e.g., American Standard, Eljer and Crane, among others) to market multiple bathroom products as a "suite" under a single mark. (Chandler dep., p. 21). These products are coordinated in that they have similar design aesthetics, providing consumers with an "easy solution." (Chandler dep., pp. 16-18). The record shows that petitioner itself offers a "suite" under the mark DEVONSHIRE; the "suite" encompasses toilets and lavatories, as well as shower doors, faucets, and bath accessories. Although respondent does not sell toilets and lavatories, the record shows that respondent sells its door hardware and various bathroom accessories (e.g., towel bars and soap dishes) under the same marks (although not under DEVONSHIRE). Respondent states, on its website, that "in every room of your home you can be at home with Baldwin's quality and innovation." As Peter Dohm, respondent's director of tubular locks, testified, respondent offers "to take the product through the home." (Dohm dep., p. 71).

Petitioner has introduced several third-party registrations in its attempt to show that entities have adopted the same mark for the types of goods involved herein, namely toilets, lavatories and door hardware. A close inspection of this evidence reveals, however, that only five of the use-based registrations cover both door

hardware, and toilets and lavatories.[10]  Although this evidence is far from overwhelming on this factor, it nevertheless has probative value to the extent that the registrations serve to suggest that toilets and sinks on the one hand, and door hardware on the other, are goods of a type that emanate from the same source.  In re Infinity Broadcasting Corp. of Dallas, 60 USPQ2d 1214 (TTAB 2001); and In re Albert Trostel & Sons Co., 29 USPQ2d 1783 (TTAB 1993).

The record establishes that it is not uncommon for consumers to encounter a variety of bathroom products, including toilets, sinks and door hardware for use in the bathroom, emanating from the same source, and even under the same mark.

We consequently find that the parties' goods are related.  This factor weighs in favor of petitioner.

### Trade Channels

Petitioner's toilets and lavatories are sold through wholesale distributors in their showrooms, kitchen and bath dealers, plumber showrooms, and home centers such as Home Depot and Home Expo.

---

[10] As correctly observed by respondent, most of the registrations cover door hardware and other bathroom products, but not specifically including toilets and lavatories.  Although we have considered these registrations, they obviously do not have the same probative value as the registrations listing toilets and lavatories (or sinks).

Respondent's door hardware, due to its expensive nature, is generally sold through wholesale showrooms, and through respondent's website on the Internet. In addition, however, respondent's goods are sometimes sold in home centers such as Home Depot. (See respondent's answer to Interrogatory No. 1(3), wherein respondent states that it sells its goods in a variety of trade channels, including "in large retail establishments featuring home improvement products and building materials"). Thus, although a Home Depot store is not the traditional venue for respondent's products, respondent does in fact sell a small percentage of its goods at Home Depot. (Babula dep., pp. 31-32).

As noted earlier, the determination of whether there is a likelihood of confusion must be based on the goods as they are identified in the involved registrations. Where there is no limitation on the channels of trade in the identification of goods in the subject registration, it is presumed that the goods move in all normal channels of trade.

The normal trade channels for door hardware include home centers such as Home Depot. And, in point of fact, the record establishes that the parties' goods are sold in the exact same chain of stores, namely Home Depot. Respondent's argument that the goods are found in different departments of these stores is unavailing. This is so because, as noted

28

above, respondent's identification of goods, as worded, is broad enough to encompass hardware for bathroom doors and cabinets, and shower doors. These types of goods would likely be sold in the same department as other bathroom products such as toilets and lavatories.

We also note that the parties' goods have been promoted at the same trade shows. The parties' products also have been promoted in the same publications, albeit in different sections of the publications.

The facts that the goods travel in the same trade channels and are sold in the same stores weigh in petitioner's favor.

## Conditions of Sale

Respondent would have us conclude that the parties' goods are not impulse purchase items. According to respondent, its handle sets, having a retail list price of $540, would be purchased only once during the time that an owner owns his or her home. In view of the cost and the extended life of the product, respondent asserts that consumers purchasing its goods will exercise "great care." Likewise, respondent asserts, petitioner's toilets and lavatories, ranging in price from $65-$556, would be purchased only after "careful consideration." Respondent points to the potentially expensive cost of petitioner's goods, coupled with their infrequent replacement.

29

Although respondent may actually sell only premium door hardware, its identification of goods in the involved registration is not limited in terms of price. In fact, as Michael Babula, respondent's vice president of sales, testified, door hardware may be quite inexpensive. Inasmuch as the identification of goods is not limited to expensive hardware, we must presume that respondent's hardware encompasses hardware of all price ranges. Thus, the goods would encompass not only expensive hardware, but inexpensive hardware as well. Insofar as less expensive hardware is concerned, consumers could not be expected to exercise the same degree of care that they might use in buying an expensive handle set. In this case, based on the necessary presumption that the goods can vary widely in price, purchasers may be expected to exercise a range of care in their purchasing decision, from ordinary to discerning.

Given the legal constraints in analyzing respondent's goods, we must presume that the goods include inexpensive items. This presumption overcomes respondent's arguments.

This factor is neutral.

### Classes of Purchasers

As shown by the record, the ultimate consumers of the parties' goods are the same, namely ordinary consumers. They may buy the parties' goods directly or from resellers, or even select them for installation by a builder or

30

remodeler.  Given the identity in ultimate consumers, this factor weighs in petitioner's favor.

### Third-Party Uses

The sixth du Pont factor requires consideration of any evidence pertaining to "the number and nature of similar marks in use on similar goods."  In an attempt to show that petitioner's mark lacks distinctiveness and is entitled to a narrow scope of protection, respondent took the testimony of Alexander Rabinovich, a patent agent employed at the law firm representing respondent in this proceeding.  Mr. Rabinovich testified about his search of the Internet which revealed third-party uses of DEVONSHIRE in connection with vinyl flooring; chandeliers; area rugs; carpeting; wood fireplace mantles; interior paint; retaining wall concrete blocks; wallpaper borders; towel bars and rings, and toilet paper holders and lighting; and ceramic tiles.  Inasmuch as several of the third-parties' goods may be found in bathrooms and are, as such, related to petitioner's goods, respondent contends that this usage of DEVONSHIRE by others diminishes the distinctiveness of petitioner's mark. Respondent contends that the testimony establishes that the referenced products are available for purchase on the Internet.  Respondent concedes, however, that Mr. Rabinovich "did not actually purchase these products, nor did Mr. Rabinovich visit the actual physical locations or correspond

with the owners in writing, or inquire whether or not the DEVONSHIRE mark appears on the products or their packaging." (Brief, p. 37).

Although we have given some weight to the evidence of third-party use, the weight is limited given the absence of any corroborating facts bearing on the extent of such use. That is to say, there are no specifics regarding the sales or promotional efforts surrounding the third-party marks. Thus, we are unable to conclude that consumers have become conditioned to recognize that several other entities use the mark DEVONSHIRE for products that may be used in the bathroom. Carl Karcher Enterprises Inc. v. Stars Restaurant Corp., 35 USPQ2d 1125, 1130-31 (TTAB 1995).

We find this factor to be neutral.

### Fame

Petitioner contends that its mark "is a strong mark and is entitled to a broad scope of protection." Respondent has criticized petitioner's evidence, contending that the record does not establish that the mark is strong.

So as to be clear on this point, petitioner has not claimed that its mark is "famous" as contemplated by case law. We find that the fame factor is neutral. We also find, however, given petitioner's impressive sales figures and advertising expenditures, coupled with the arbitrary nature of the mark, that petitioner's mark is strong.

## Actual Confusion

Although respondent acknowledges that petitioner is not required to show actual confusion in order to prevail herein, respondent goes on to contend that the six years of contemporaneous use of the parties' marks without any known instances of actual confusion is probative evidence in showing that no likelihood of confusion exists between the marks.

The lack of evidence of actual confusion has not swayed our decision herein. We agree with petitioner's assessment of this factor:

> [T]he absence of actual confusion is readily understandable in the present case, since [respondent] has not used the mark on many of the products that are literally covered by its registration, including metal shower door hardware, metal bathroom door hardware and metal cabinet door hardware. In addition, as [respondent's] witnesses explained, the particular door hardware currently sold under the DEVONSHIRE mark has been relatively expensive. But again, nothing prevents [respondent] from offering inexpensive door hardware under the mark.

(Brief, p. 24).

Inasmuch as it appears that there may have been no meaningful opportunity for confusion to occur between the marks as actually used in the marketplace, we find this factor to be neutral in our analysis.

## Conclusion

We have carefully considered all of the evidence pertaining to priority of use and the relevant du Pont factors, as well as all of the parties' arguments with respect thereto, including any evidence and arguments not specifically discussed in this opinion.

We conclude that petitioner has established priority of use and that consumers familiar with petitioner's toilets and lavatories sold under its mark DEVONSHIRE would be likely to believe, upon encountering respondent's mark DEVONSHIRE for "metal door hardware, namely, locks, latches and knobs" (an identification broad enough to encompass bathroom door hardware, bathroom cabinet hardware, and shower door hardware), that the goods originate with or are somehow associated with or sponsored by the same entity.  In making our determination, we have balanced the relevant du Pont factors.  The factors of the identity between the marks, the relatedness of the goods, the similar trade channels for the goods, and the identity in the classes of purchasers for the goods all weigh strongly in petitioner's favor.

To the extent that any of respondent's points raise a doubt about our conclusion, all doubt on the issue of likelihood of confusion must be resolved in favor of the prior user and against the newcomer.  San Fernando Mfg. Co.

v. JFD Electronics Components Corp., 565 F.2d 683, 196 USPQ 1, 2 (CCPA 1977).

**Decision:** The petition for cancellation is granted, and Registration No. 2267737 will be cancelled in due course.