This Opinion is a
Precedent of the TTAB

Mailed: May 15, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE
⎯⎯
Trademark Trial and Appeal Board
⎯⎯

*Kemi Organics, LLC*
*v.*
*Rakesh Gupta*

⎯⎯

Cancellation No. 92065613
⎯⎯

Philip G. Hampton, II and Scott E. Benfield, of Haynes and Boone, LLP,
   for Kemi Organics, LLC.

Ruth K. Khalsa, of Legalforce RAPC Worldwide, P.C.,
   for Rakesh Gupta.

⎯⎯

Before Bergsman, Hightower, and Larkin,
   Administrative Trademark Judges.

Opinion by Larkin, Administrative Trademark Judge:

Kemi Organics, LLC ("Petitioner") has petitioned to cancel Registration No. 4544475 for the mark KEMI OYL ("OIL" disclaimed) in standard characters on the Principal Register for "cosmetics; eyebrow cosmetics; sun-tanning preparations; shampoo, conditioners, hair dye, soap for body care; skin moisturizer; cosmetic creams for skin care; lotions for face and body care; skin lighteners; hair lighteners; powdered hair bleach," in International Class 3, owned by Rakesh Gupta

("Respondent").[1] Petitioner alleges a claim of likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), based on alleged prior use of various KEMI OYL marks in connection with a variety of hair and skin care products, and a claim of dilution by blurring under Sections 13 and 43(c) of the Trademark Act, 15 U.S.C. §§ 1063 and 1125(c). 1 TTABVUE 7-10. Respondent denied the material allegations of the Petition for Cancellation and asserted the affirmative defenses of laches, waiver, and estoppel. 5 TTABVUE 3-7.

The parties stipulated during their required discovery conference to resolve this case using the summary judgment model of the Board's Accelerated Case Resolution ("ACR") procedures, discussed in Sections 528.05(a)(2) and 702.04(b) of the Trademark Trial and Appeal Board Manual of Procedure ("TBMP") (June 2017). 6 TTABVUE 1-3. The parties subsequently filed a Joint Stipulation for ACR, 7 TTABVUE, in which they agreed, inter alia, that the "sole ground for cancelling the subject registration is likelihood of confusion and priority,"[2] that "[f]or purposes of this case, there is a likelihood of confusion between the parties' marks,"[3] and that

---

[1] Respondent's registration issued on June 3, 2014 from Application Serial No. 85834717, filed on January 29, 2013 under Sections 1(b) and 44(d) of the Trademark Act, 15 U.S.C. §§ 1051(b) and 1126(d), on the basis of Respondent's allegation of a bona fide intention to use the mark in commerce and his filing of an application to register the mark in the United Kingdom. Respondent subsequently perfected his basis for registration under Section 44(e), 15 U.S.C. § 1126(e).

[2] Petitioner nevertheless pursued its dilution claim in its ACR Brief. 9 TTABVUE 15-17. Respondent objected in his ACR Brief to consideration of the dilution claim on the ground that it was waived in the Joint Stipulation. 10 TTABVUE 11-12. We agree with Respondent and have given Petitioner's dilution claim no consideration.

[3] It is apparent from the parties' ACR briefs that they had somewhat different views regarding this language in their stipulation. Despite this language, Petitioner engaged in an analysis under *In re E. I. duPont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973), of various likelihood of confusion factors, 9 TTABVUE 11-14, prompting Respondent

"Respondent may pursue its specific affirmative defenses, even if those defenses were not properly pleaded in the Answer." 7 TTABVUE 2.[4] Accordingly, the issues for resolution are (1) whether Petitioner proved priority of use of its alleged KEMI OYL marks, and, if so, (2) whether its claim under Section 2(d) of the Trademark Act is nevertheless barred by laches.[5] The case is fully briefed. We grant the Petition for Cancellation.

## I.    The Record and Evidentiary Matters

The parties stipulated that testimony would be presented by affidavit or declaration and exhibits thereto, 6 TTABVUE 2;[6] that all documents and things produced in response to discovery requests were authentic for purposes of admission into evidence; and that all affidavits and declarations, and exhibits thereto,

---

to discuss "those representations which Petitioner makes in excess of the stipulation," 10 TTABVUE 12, including Petitioner's family of marks and fame arguments. *Id.* at 12-14. To obtain the full benefit of ACR, it is important that parties draft clearly-worded stipulations regarding procedures, claims and defenses, and the factual record. *See, e.g., Fiserv, Inc. v. Elec. Transaction Sys. Corp.*, 113 USPQ2d 1913 (TTAB 2015); *Chanel, Inc. v. Makarczyk*, 110 USPQ2d 2013 (TTAB 2014); *see generally* TBMP §§ 528.05(a)(2) and 702.04(b).

[4] In his ACR Brief, Respondent alleged that Petitioner abandoned its marks, an unpleaded affirmative defense. 10 TTABVUE 6, 8-9. The parties stipulated that "Respondent may pursue its specific affirmative defenses, even if those defenses were not properly pleaded in the Answer." 7 TTABVUE 2. Given Petitioner's failure to object to Respondent's assertion of abandonment, and Petitioner's argument that its use of its mark has been continuous, we have considered Respondent's abandonment defense in the context of the issue of priority of use.

[5] Respondent's other pleaded affirmative defenses are waived because Respondent did not pursue them in his ACR Brief. *Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 USPQ2d 1419, 1422 (TTAB 2014).

[6] Under the amended Trademark Rules of Practice, the use of affidavit or declaration testimony at trial is permitted in all cases. Trademark Rule 2.123(a)(1), 37 C.F.R. § 2.123(a)(1); *see also* TBMP § 703.01(a).

submitted concurrently with the parties' ACR briefs,[7] are admissible, subject to the other party's right to object on substantive grounds or to attack its probative value. 7 TTABVUE 3.[8]

## A. The Record

The record consists of:

(1) the pleadings;

(2) the file history of Respondent's registration, by operation of Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1);

(3) the declaration of Scott E. Benfield, one of Petitioner's attorneys, and Exhibits 1-9 attached thereto, 9 TTABVUE 20-336; the affidavit of Lawrence N. McClenney, Petitioner's President, and Exhibit A thereto, 9 TTABVUE 337-349; the affidavit of Emily Hyun, Vice President of Ben's Beauty Dist. Co., Inc. in Jessup, Maryland, 9 TTABVUE 350-351; and the affidavit of Nelson Kriger, Main Buyer and Vice President at Carib Sales, LLC of Opa-Locka, Florida, 9 TTABVUE 352-353; all made of record in connection with Petitioner's ACR Brief;

---

[7] The parties' initial stipulation to ACR provides for the submission of rebuttal evidence. 6 TTABVUE 2.

[8] The parties also stipulated to a limited discovery period, page limits in their briefs, and limits on the numbers of discovery depositions, interrogatories, and document requests, and they agreed to forgo an oral hearing and the use of expert witnesses. 6 TTABVUE 2; 7 TTABVUE 3.

(4) the declaration of Respondent's counsel Ruth Khalsa and Exhibit 1 thereto, which consists of Respondent's own declaration, 10 TTABVUE 17-20, made of record in connection with Respondent's ACR Brief; and

(5) the supplemental declaration of Mr. Benfield and Exhibits 10-13 thereto, made of record in connection with Petitioner's Rebuttal Trial Brief. 13 TTABVUE 15-34.

### B. Evidentiary Matters

Respondent claims that Petitioner's third-party witnesses "were not disclosed in Petitioner's Initial Disclosure Statement, or subsequently,"[9] and that the affidavits of all three of Petitioner's witnesses are "lacking in probative value and unhelpful to Petitioner's position." 10 TTABVUE 7. Respondent argues elsewhere that the "evidence adduced to support Petitioner's priority claim are [sic] self-serving and uncorroborated affidavits – none of which establish that the affiants have personal knowledge of facts or events that would tend to support Petitioner's claim of 'continuous' use . . . ." 10 TTABVUE 8.[10]

As discussed below, Petitioner is not required to show "continuous use" of its claimed mark,[11] and, in any event, Respondent's arguments regarding the probative

---

[9] Respondent has not requested entry of a preclusion sanction under Rule 37(c)(1) of the Federal Rules of Civil Procedure for the claimed failure to disclose the third-party witnesses, and he attacks their testimony on the merits.

[10] A witness's lack of personal knowledge of a matter can result in the exclusion of his or her testimony under Rule 602 of the Federal Rules of Evidence, *see generally City Nat'l Bank v. OPGI Mgmt. GP Inc./Gestion OPGI Inc.*, 106 USPQ2d 1668, 1673-74 (TTAB 2013), but Respondent has not requested the exclusion of the testimony of the witnesses on that basis.

[11] Petitioner alleged ownership of "a family of marks around the term KEMI OYL" in its Petition for Cancellation, 1 TTABVUE 7 (Pet. for Canc. ¶ 2), and repeats this claim in its

value of the testimony of Petitioner's witnesses go to the weight to be accorded their testimony, not its admissibility. We have considered their testimony while keeping in mind Respondent's arguments attacking its credibility and probative value. *See Exec. Coach Builders, Inc. v. SPV Coach Co.*, 123 USPQ2d 1175, 1176 (TTAB 2017).

## II. Standing

A threshold issue in every inter partes case is the plaintiff's standing to challenge registration. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014); *John W. Carson Found. v. Toilets.com Inc.*, 94 USPQ2d 1942, 1945 (TTAB 2010). The parties stipulated that "Petitioner has standing to bring this proceeding," 7 TTABVUE 2, and this is sufficient to establish Petitioner's standing. *Melwani v. Allegiance Corp.*, 97 USPQ2d 1537, 1542 (TTAB 2010) (holding that a plaintiff must establish standing in the absence of an admission or stipulation from the defendant).

## III. Priority

Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), provides a ground for cancellation of a registration that has been on the Principal Register for fewer than five years on the basis of a petitioner's "ownership of 'a mark or trade name previously

---

ACR Brief, 9 TTABVUE 6, but Mr. McClenney's affidavit references "the KEMI OYL trademark" in the singular. McClenney Aff. ¶¶ 8-10 (9 TTABVUE 338). The record shows that this mark is a composite word-and-design mark, 9 TTABVUE 12, which has been registered several times previously in essentially the same format for hair oil. 9 TTABVUE 23, 226, 233, 238, 266, 322. Proof of a family of marks requires more than proof of use of "a series of similar marks," *J & J Snack Food v. McDonald's Corp.*, 932 F.2d 1460, 18 USPQ2d 1889, 1891 (Fed. Cir. 1991), and Petitioner at most merely establishes that. We agree with Respondent that Petitioner has not shown that it owns a family of marks. In any event, the parties stipulated that there is a likelihood of confusion.

used in the United States . . . and not abandoned,'" *Exec. Coach Builders*, 123 USPQ2d at 1180 (quoting 15 U.S.C. § 1052(d)), and a likelihood of confusion. Here, the parties stipulated that "there is a likelihood of confusion between the parties' marks," 7 TTABVUE 2, so we only need to determine whether Petitioner established "proprietary rights in its pleaded common-law mark that precede [Respondent's] actual or constructive use of its involved mark." *Exec. Coach Builders*, 123 USPQ2d at 1180; *see also Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981) (plaintiff must establish proprietary rights, either inherent in or by acquisition of secondary meaning in, pleaded common-law mark). We turn first to a determination of the relevant date of Respondent's "actual or constructive use of its involved mark." *Exec. Coach Builders*, 123 USPQ2d at 1180.

A.    **Respondent's Date of Actual or Constructive Use of His Mark**

For priority purposes, a respondent may rely upon the filing date of the underlying application that matured into its involved registration. 15 U.S.C. § 1057(c); *Cent. Garden & Pet Co. v. Doskocil Mfg. Co.*, 108 USPQ2d 1134, 1140-41 (TTAB 2013). In addition, a respondent may assert and rely upon an earlier priority filing date based on a foreign application under Section 44(d), 15 U.S.C. § 1126(d). Section 44(d) provides, in pertinent part, that:

> An application for registration of a mark under section[] 1051 . . . filed by [an eligible person] who has previously duly filed an application for registration of the same mark in [an eligible foreign country] shall be accorded the same force and effect as would be accorded to the same application if filed in the United States **on the same date on which the application was first filed in such foreign country**: Provided, [t]hat – (1) the application in the United States is filed within 6 months from the date on

which the application was first filed in the foreign country
. . . . (Emphasis added).

*See* Trademark Manual of Examining Procedure ("TMEP") (Oct. 2017) § 1003 ("If an eligible applicant files the U.S. application claiming §44(d) priority within six months of filing the first application to register the mark in a treaty country, the filing date of the first-filed foreign application is the effective filing date of the U.S. application."). Petitioner's argument that it has priority because Respondent "only began use of the KEMI OYL mark on November 1, 2013," 9 TTABVUE 11, is incorrect.

When Respondent filed the application that matured into the involved registration on January 29, 2013, he alleged a bona fide intention to use the mark in commerce under Section 1(b) of the Trademark Act, and claimed a priority filing date of December 7, 2012 under Section 44(d) on the basis of his filing of an application to register the mark in the United Kingdom on December 7, 2012. In a response to an Office Action, in order to perfect a Section 44(e) basis for registration, Respondent submitted his United Kingdom registration, which states that the KEMI OYL mark was registered in the United Kingdom "as of the date 31 August 2012." Respondent now argues that his "mark has a priority date tracking its foreign filing date of August 31, 2012 . . . ." 10 TTABVUE 7. The involved registration issued with the December 7, 2012 Section 44(d) priority filing date. It would appear that Respondent mistakenly provided an incorrect date as his priority filing date, but we need not reach the question of whether Respondent may rely upon the earlier date as the priority filing date, in view of Petitioner's established use discussed below. Whether we accord

Respondent the priority filing date on the face of his registration or the earlier priority filing date now alleged to be the accurate date, Petitioner has priority.

## B. Petitioner's Priority Claim and Respondent's Abandonment Defense

Petitioner claims that it used its KEMI OYL mark prior to Respondent's constructive use priority filing date, 9 TTABVUE 10, while Respondent claims that the KEMI OYL marks "[w]ere, and [r]emain, [a]bandoned." 10 TTABVUE 8.

As noted above, Section 2(d) provides a ground for cancellation based upon a likelihood of confusion with "a mark . . . previously used in the United States . . . and not abandoned . . . ." 15 U.S.C. § 1052(d). Petitioner bears the burden of proving that its mark was "previously used in the United States" before Respondent's constructive use priority date. *Exec. Coach Builders*, 123 USPQ2d at 1180.

With respect to Section 2(d)'s requirement that Petitioner's mark be "not abandoned," "Section 45 of the Trademark Act, 15 U.S.C. § 1127, provides in relevant part that a mark shall be deemed 'abandoned': When its use has been discontinued with intent not to resume such use." *Id.* In this case, Respondent's "abandonment allegation is, in effect, in the stance of a defense to a prior use assertion," *West Fla. Seafood Inc. v. Jet Rests. Inc.*, 31 F.3d 1122, 31 USPQ2d 1660, 1666 (Fed. Cir. 1994), and Respondent "bears at a minimum a burden of coming forth with some evidence of abandonment." *Id.*[12] If Respondent establishes a prima facie case of abandonment,

---

[12] According to Professor McCarthy, in *West Fla. Seafood* the Federal Circuit "noted that while Lanham Act § 2(d) provides a bar to registration if a conflicting mark has been 'previously used in the United States by another and not abandoned,' a petitioner for cancellation does not bear the burden of negating abandonment when seeking to prove prior use. Rather, abandonment is a defense to be proven by the registrant." 3 J. Thomas

the burden of production then shifts to Petitioner to show use, or the intent to resume use, although the ultimate burden of persuasion on the issue of abandonment remains on Respondent. *See, e.g.*, *Crash Dummy Movie LLC v. Mattel, Inc.*, 601 F.3d 1387, 94 USPQ2d 1315, 1316 (Fed. Cir. 2010); *Exec. Coach Builders*, 123 USPQ2d at 1180; *Azeka Bldg. Corp. v. Azeka*, 122 USPQ2d 1477, 1485 (TTAB 2017).

Petitioner's evidence of prior use consists of (1) the affidavit of Mr. McClenney, Petitioner's President; (2) the declaration of its counsel Scott Benfield, who primarily authenticates pages from the Patent and Trademark Office's Trademark Status & Document Retrieval ("TSDR") database regarding Petitioner's cancelled registrations of various KEMI OYL marks[13] and an abandoned application to register a KEMI OYL mark filed by Mr. McClenney in his own name;[14] (3) the declarations of Emily Hyun and Nelson Kriger, two distributors of hair and skin care products; (4) three magazine advertisements, from April and May 1996 and February 1999, showing a KEMI OYL product, McClenney Aff. ¶ 11; Ex. A (9 TTABVUE 338, 340-49); and (5) "a true and

McCarthy, *McCarthy on Trademarks & Unfair Competition* § 20:17 (5th ed. Mar. 2018 update).

[13] Registration No. 1362817 for the mark KEMI-OYL for a natural oil for the hair issued on October 1, 1985 and was cancelled on March 16, 1992. Benfield Decl. ¶ 5; Ex. 3 (9 TTABVUE 20, 229-233). Registration No. 1844028 for the mark KEMI OYL and design for hair oil issued on July 12, 1994 and was cancelled on July 21, 2001. Benfield Decl. ¶ 6; Ex. 4 (9 TTABVUE 20, 234-238). Registration No. 2943473 for the mark KEMI OYL and design for hair oil issued on April 26, 2005 and was cancelled on September 21, 2012. Benfield Decl. Ex. 5 (9 TTABVUE 239-266). Registration No. 3043420 for the mark KEMI OYL PRO-GRO and design for hair dressing issued on January 17, 2006 and was cancelled on September 21, 2012. Benfield Decl. Ex. 6 (9 TTABVUE 267-322).

[14] Application Serial No. 85823586 to register KEMI O-R-G-A-N-I-C-S ALL NATURAL HAIR OIL and design for all natural hair oils was filed on January 15, 2013 and abandoned on July 20, 2016. Benfield Decl. ¶ 3; Ex. 1 (9 TTABVUE 20, 22-162).

correct copy of an image of the KEMI OYL label . . . found through a Google search for the term 'Kemi Oyl,' on November 2, 2017." Benfield Decl. ¶ 7; Ex. 7 (9 TTABVUE 21, 326). This evidence is rather sparse, but the Federal Circuit has instructed us that in considering evidence of prior use, we must not consider individual portions in isolation, but must "look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use." *West Fla. Seafood*, 31 USPQ2d at 1663 (finding priority of use of mark for restaurant services on the basis of three advertisements in local newspapers, a Florida state service mark registration, three regulatory licenses, and a food service inspection report).

We begin with the documentary evidence. While Petitioner acknowledges that it must rely upon its common law **use** to prove priority because it does not currently own a registration, 9 TTABVUE 10, it nevertheless purports to rely upon **cancelled registrations** and an **abandoned application** as some evidence of the past use of its mark. Petitioner's cancelled registrations, however, are only evidence that the registrations issued, and are not evidence of use of the registered marks at any time. *See, e.g., Action Temp. Servs. Inc. v. Labor Force Inc.*, 870 F.2d 1563, 10 USPQ2d 1307, 1309 (Fed. Cir. 1989); *Time Warner Entm't Co. v. Jones*, 65 USPQ2d 1650, 1653 n.6 (TTAB 2002); *Kellogg Co. v. Western Family Foods, Inc.*, 209 USPQ 440, 442 (TTAB 1980) (an expired or cancelled registration is not evidence of use of the registered mark at any time because it no longer benefits from the presumptions of Section 7(b) of the Trademark Act). Similarly, Mr. McClenney's abandoned application has "'no probative value other than as evidence that the application was

filed.'" *Edwards Lifesciences Corp. v. VigiLanz Corp.*, 94 USPQ2d 1399, 1403 n.4 (TTAB 2010) (quoting *In re Phillips-Van Heusen Corp.*, 63 USPQ2d 1047, 1049 n.4 (TTAB 2002)). The cancelled registrations and abandoned application do not establish priority of use of the KEMI OYL marks.[15]

The rest of Petitioner's documentary evidence has little or no probative value on the issue of priority when it is considered in the context of the accompanying testimony. The November 2017 KEMI OYL product label attached to Mr. Benfield's declaration does not show use of the mark prior to December 7, 2012 (or August 31, 2012). With respect to the 1996 and 1999 advertisements, Mr. McClenney testified that "[s]ince as early as 1995, [Petitioner] has advertised its Kemi Oyl products in magazines, including, but not limited to, Vibe, ysb, and Upscale," and that the three advertisements attached to his affidavit are "[c]opies of [Petitioner's] magazine advertisements," McClenney Aff. ¶ 11; Ex. A (9 TTABVUE 338), but there is no subsequent advertising in the record. The 1996 and 1999 advertisements show, at most, that products bearing the KEMI OYL mark were being advertised in 1996 and 1999. *Cf. West Fla. Seafood*, 31 USPQ2d at 1663 (finding that three advertisements that ran in 1983 and 1984 and that displayed the petitioner's mark corroborated the petitioner's claim of use prior to December 1986 and, together with other evidence, could be used to establish that petitioner's restaurant was actually operating under the subject mark prior to December 1986).

---

[15] At the same time, as discussed below, they also do not show Petitioner's abandonment of the registered marks.

We turn now to Petitioner's testimonial evidence. Mr. McClenney testified that he is Petitioner's President and that he founded Petitioner's ultimate predecessor in interest, Nature's Secret Corporation, in 1984.[16] McClenney Aff. ¶ 3 (9 TTABVUE 337). He testified that he twice changed the name of the company that he founded, most recently in 2011. McClenney Aff. ¶ 3 (9 TTABVUE 337). As noted above, he explained the history of Petitioner's cancelled registrations and the abandonment of the application that he filed in his own name in 2013,[17] and testified that the registrations "were inadvertently abandoned for failure to file the renewal affidavits and were subsequently cancelled by the USPTO." McClenney Aff. ¶¶ 4-7 (9 TTABVUE 337-38).[18]

Mr. McClenney testified that a "wide variety of hair and skin care products bearing the KEMI OYL mark either alone, with a distinctive design, or as part of a composite mark, have been sold in U.S. markets as early as August 11, 1984" by Petitioner or its predecessors in interest, McClenney Aff. ¶ 8 (9 TTABVUE 338); that

---

[16] His affidavit states that he founded the company in 1994, but his testimony regarding subsequent name changes shows that this is clearly a typographical error.

[17] Mr. McClenney testified that "[o]n August 11, 1984, file March 13, 1991 [sic], Nature's Secrets Corporation filed an application . . . to register KEMI-OYL as its trademark . . . ." McClenney Aff. ¶ 4 (9 TTABVUE 337). As stated in Petitioner's Trial Brief, 9 TTABVUE 10, and confirmed in the TSDR pages for this cancelled registration, 9 TTABVUE 232, the actual filing date of this application was August 17, 1984. Mr. McClenney's testimony that "products bearing the KEMI OYL mark . . . have been sold in U.S. markets as early as August 11, 1984 . . .," McClenney Aff. ¶ 8 (9 TTABVUE 338), suggests that the erroneous claimed filing date of August 11, 1984 is also a typographical error.

[18] Respondent's claim that Mr. McClenney lacks personal knowledge is unavailing. His testimony that he founded Petitioner's ultimate predecessor in interest, that he has worked for Petitioner since 1984 and is currently its President, and that he was involved in past efforts to register the KEMI OYL marks, establishes that he has personal knowledge of the matters in his declaration. *City Nat'l Bank*, 106 USPQ2d at 1673-74.

they "have sold hair and skin care products under the KEMI OYL trademark for more than thirty years;" McClenney Aff. ¶ 9 (9 TTABVUE 338); and that the products "are sold throughout the United States and the Carribean [sic] by national distributors, salons and online retailers." McClenney Aff. ¶ 10 (9 TTABVUE 338).[19] He testified that "[t]he KEMI OYL products have annual sales over the past the [sic] eight years" in the following amounts:

(1) 2010: $392,199;

(2) 2011: $208,498;

(3) 2012: $645,012;

(4) 2013: $253,033;

(5) 2014: $393,640;

(6) 2015: $296,749;

(7) 2016: $254,859; and

(8) 2017 (through November 2): $163,421.

McClenney Aff. ¶ 12 (9 TTABVUE 339).

Respondent attacks Mr. McClenney's affidavit on two grounds. First, Respondent argues generally that it is "lacking in probative value and unhelpful to Petitioner's position," 10 TTABVUE 7, and that it is one of Petitioner's "self-serving and uncorroborated affidavits – none of which establish that the affiants have personal

---

[19] It is unclear, from this portion of Mr. McClenney's testimony, whether Petitioner itself has sold products bearing the KEMI OYL mark to such customers in the Caribbean and, if so, how much of Petitioner's sales have been to persons outside the United States. It is clear, however, from Mr. McClenney's testimony as a whole, coupled with the testimony of Petitioner's third-party witnesses, that Petitioner has made sales to customers in the United States, and that those sales predated Respondent's constructive use date.

knowledge of facts or events that would tend to support Petitioner's claim of 'continuous' use . . . ." 10 TTABVUE 8. Second, he argues specifically that "[c]onspicuously absent from Mr. McClenney's testimony is any assertion that Petitioner's use of the KEMI OYL mark has been ***continuous***." 10 TTABVUE 9.

Respondent's second argument is irrelevant. Assuming, without deciding, that Mr. McClenney's affidavit does not prove that Petitioner made continuous use of its mark prior to Respondent's constructive use date, continuous use is not required to establish Petitioner's priority. Section 2(d) "does not speak of 'continuous use,' but rather of whether the mark or trade name has been '*previously used* in the United States by another *and not abandoned.*'" *West Fla. Seafood*, 31 USPQ2d at 1665 (holding that Board erred in finding that the petitioner failed to prove priority under Section 2(d) because the petitioner did not prove use during the period prior to the filing of its petition for cancellation and thereafter, where the petitioner proved use prior to filing date of the application that matured into the subject registration). Although the record as a whole suggests sporadic past use of the KEMI OYL mark, Petitioner is only required to show "proprietary rights in its pleaded common-law mark that precede [Respondent's] actual or constructive use of its involved mark," *Exec. Coach Builders*, 123 USPQ2d at 1180, which rights were not thereafter abandoned. *West Fla. Seafood*, 31 USPQ2d at 1665. Indeed, even if Petitioner abandoned the KEMI OYL mark through non-use between 2001 and 2005, as Respondent claims, 10 TTABVUE 11, or at some other point in the past, it is

Respondent's burden to show that Petitioner did not resume use before Respondent's priority date. *See Exec. Coach Builders*, 123 USPQ2d at 1180.

With respect to Respondent's attack on the probative value and credibility of Mr. McClenney's testimony, it is well settled that the "oral testimony even of a single witness may be adequate to establish priority, but only if it is sufficiently probative. Such testimony 'should not be characterized by contradictions, inconsistencies, and indefiniteness but should carry with it conviction of its accuracy and applicability.'" *Id.* at 1184 (quoting *B.R. Baker Co. v. Lebow Bros.*, 150 F.2d 580, 66 USPQ 232, 236 (CCPA 1945)).

Mr. McClenney's affidavit is far from being a model of clarity or completeness, and his testimony is not accompanied by the type or quantity of documentary evidence that one would expect to be readily available to show the use of a mark that Petitioner claims "became famous before [Respondent] commenced use of or filed an application to register a KEMI OYL mark." 9 TTABVUE 15.[20] Oral testimony is, of course, always "strengthened by corroborative documentary evidence," *Exec. Coach Builders*, 123 USPQ2d at 1184, but "[w]hile it is certainly preferable for a party's testimony to be supported by corroborating documents, the lack of documentary evidence is not fatal." *Productos Lacteos Tocumbo*, 98 USPQ2d at 1931. The critical portions of Mr. McClenney's affidavit for our purposes—his testimony that Petitioner and its

---

[20] As discussed above, the only documentary corroboration of Mr. McClenney's testimony is three advertisements from the 1990s; he provides no labels, product photographs, webpages, or business records reflecting use of the mark. *Cf. Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1930-31 (TTAB 2011) (discussing corroboration of oral testimony by documentary evidence consisting of invoices and photographs of in-store signage displaying the claimed mark).

predecessors "have sold hair and skin care products under the KEMI OYL trademark for more than thirty years," and his testimony regarding annual sales figures for KEMI OYL products from 2010 to 2017—are clear, and are neither contradicted by Respondent nor "indefinite and internally inconsistent." *Cf. Exec. Coach Builders*, 123 USPQ2d at 1182-85 (rejecting testimony of applicant's principal regarding alleged prior use because it was both indefinite and inconsistent on a number of topics). The record provides no sufficient reason for us to disregard or discount Mr. McClenney's testimony on these matters.[21] His testimony establishes, at a minimum, that Petitioner used the KEMI OYL mark at least as early as 2010, prior to Respondent's constructive use date, and that Petitioner has not abandoned the mark.

We are also persuaded by Petitioner's third-party witnesses Emily Hyun and Nelson Kriger, who testified that their companies have sold Petitioner's goods bearing the KEMI OYL mark from a time prior to Respondent's constructive use date. Ms. Hyun testified that her company "Ben's Beauty has been a customer of [Petitioner] for 19 years and has distributed [Petitioner's] products throughout Ben's Beauty's Distributors Area," which comprises 30 states and the District of Columbia. Hyun Aff. ¶¶ 3-5 (9 TTABVUE 350-51). Mr. Kriger testified that his company Carib Sales "has been a customer of [Petitioner] for 10 years and has distributed [Petitioner's] products throughout" Florida and the Caribbean and that "Carib Sales has sold

---

[21] Indeed, Respondent acknowledged use of Petitioner's mark as of 2014 when he stated to Petitioner in a July 11, 2014 email that "[w]e have been informed that you are continuing to manufacture and supply the product in the US market." Benfield Supplemental Decl. ¶ 3; Ex. 10 (13 TTABVUE 15, 20).

[Petitioner's] products bearing the KEMI OYL label since as early as" January 1, 2007. Kriger Aff. ¶¶ 3-5 (9 TTABVUE 352). He testified regarding volume and sales figures for KEMI OYL products distributed by Carib Sales from 2012 through 2017. Kriger Aff. ¶ 7 (9 TTABVUE 353). It is not clear from Mr. Kriger's testimony how many of these sales, if any, were directed to customers in Florida as opposed to customers in the Caribbean, but regardless of the end consumers of the products, the sales by Carib Sales reflect purchases from Petitioner and thus corroborate Mr. McClenney's testimony regarding Petitioner's sales in the United States. Respondent's claim that Mr. Kriger's sales figures "do not shield Petitioner from a finding of abandonment" because the "internet is rife with third-party resales of long-defunct brands," 10 TTABVUE 11 n.3, is unsupported by any record evidence.

Respondent attacks these affidavits principally on the grounds that the witnesses do not establish their personal knowledge regarding the length of their companies' distribution of products bearing the KEMI OYL mark, and that, like Mr. McClenney's affidavit, their affidavits do not establish continuous use of the mark. 10 TTABVUE 10-11. As discussed above, there is no requirement of continuous use of the KEMI OYL mark. Regarding the witnesses' personal knowledge, both witnesses specifically testified that they "have personal knowledge of all facts stated in this Affidavit."[22] They are Vice Presidents of their respective companies, and Mr. Kriger, who also

---

[22] All three of Petitioner's witnesses made this claim in form language in their affidavits. "Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. A witness's averment of personal knowledge may be sufficient to establish it depending upon the circumstances, but the better practice is for witnesses to provide additional testimony to substantiate their averments.

holds the title of "Main Buyer" for his company, provided specific figures regarding his company's sales of KEMI OYL products between 2012 and 2017 that he appears to have handwritten into his affidavit, suggesting that he reviewed his company's business records for that period. Hyun Aff. ¶¶ 1-2 (9 TTABVUE 350); Kriger Aff. ¶¶ 1-2 (9 TTABVUE 352). *See City Nat'l Bank*, 106 USPQ2d at 1673 ("testimony by a person that his job responsibilities require him to be familiar with the activities of the company that occurred prior to his employment may be sufficient to lay a foundation for his subsequent testimony"). We find that the third-party witnesses made a sufficient showing of personal knowledge of the facts stated in their affidavits. Their testimony corroborates Mr. McClenney's testimony of Petitioner's prior use of the KEMI OYL mark.

As discussed above, Respondent attacks the credibility of Petitioner's witnesses and documentary evidence, 10 TTABVUE 9-11, but in the absence of any contrary testimony from a discovery deposition of Mr. McClenney, any contrary fruits of discovery, any testimony from Respondent's own witnesses, or any documentary evidence establishing non-use of the KEMI OYL mark or impeaching the testimony of Petitioner's witnesses, Petitioner's evidence of prior use stands unrebutted. *Cf. Exec. Coach Builders*, 123 USPQ2d at 1185-89 (testimony of opposer's president regarding prior use of mark was contradicted by testimony of applicant's eight trial witnesses, which established non-use of the mark during the relevant period and provided "a powerful counterweight" to opposer's evidence).

For his abandonment defense, Respondent relies upon the portion of Section 45 stating that "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment," 10 TTABVUE 8-9, arguing that Petitioner "rel[ies] on the uncorroborated declaration of [Petitioner's] President and two alleged third-party distributors for its claim that use of the alleged marks in its cancelled application and registrations has been continuous and, impliedly, that the marks are not abandoned." 10 TTABVUE 9. As already explained in detail, this argument and the cited evidence fail to establish a prima facie case of abandonment. The relevant issue is whether Petitioner abandoned its mark, not whether it "abandoned" past registrations of its mark by allowing them to be cancelled. The fact that Petitioner's several past registrations were cancelled under Section 8 of the Trademark Act does not permit us to infer that the registered marks were abandoned. "'[C]ancellation of a trademark registration does not necessarily translate into abandonment of common law trademark rights. Nor does it establish its owner's lack of intent to use the mark.'" *Azeka Bldg. Corp.,* 122 USPQ2d at 1483 n.11 (quoting *Crash Dummy Movie,* 94 USPQ2d at 1317).[23]

---

[23] Indeed, even if we could infer that each cancellation of one of Petitioner's registrations reflected cessation of use of the registered mark, Petitioner filed new use-based applications to register a KEMI OYL mark for hair oil following each cancellation. When Petitioner's Registration No. 1362817 was cancelled on March 16, 1992, Petitioner filed a new application on April 8, 1993. When the resulting Registration No. 1844028 was cancelled on July 21, 2001, Petitioner filed new applications on February 6, 2004 and February 9, 2004. When the resulting Registration Nos. 2943473 and 3043420 were cancelled on September 21, 2012, Petitioner's President filed a new application on January 15, 2013. These serial filings suggest that Petitioner has not abandoned the KEMI OYL mark.

"[L]ook[ing] at the evidence as a whole, as if each piece of evidence were part of a puzzle [to be] fitted together," *West Fla. Seafood*, 31 USPQ2d at 1663, we find that the McClenney, Hyun, and Kriger affidavits collectively establish by a preponderance of the evidence that Petitioner was using the KEMI OYL mark prior to any constructive use date upon which Respondent may rely, and that Respondent did not establish a prima facie case that Petitioner abandoned its mark. Because the parties stipulated to a likelihood of confusion, Petitioner has established both elements of its claim under Section 2(d) and is entitled to cancellation of Respondent's registration unless Respondent shows that Petitioner's claim is barred by laches. We turn now to that defense.

## IV. Laches

Section 19 of the Trademark Act, 15 U.S.C. § 1069, provides that in "all inter partes proceedings equitable principles of laches, estoppel, and acquiescence, where applicable, may be considered and applied." Laches is an available equitable defense in a cancellation proceeding based upon a likelihood of confusion. *Nat'l Cable Television Ass'n Inc. v. Am. Cinema Editors, Inc.*, 971 F.2d 1572, 19 USPQ2d 1424, 1431 (Fed. Cir. 1991); *Ava Ruha Corp. v. Mother's Nutritional Ctr., Inc.*, 113 USPQ2d 1575, 1580 (TTAB 2015). "In order to prevail on the affirmative defense of laches, Respondent is required 'to establish that there was undue or unreasonable delay [by Petitioner] in asserting its rights, and prejudice to [Respondent] resulting from the

delay.'" *Id.* (quoting *Bridgestone/Firestone Research Inc. v. Automobile Club de l'Ouest de la France*, 245 F.3d 1359, 58 USPQ2d 1460, 1462 (Fed. Cir. 2001)).[24]

### A. Undue or Unreasonable Delay

"We turn first to a calculation of the length of delay between the time when a petitioner first has notice of a defendant and its mark and the time when petitioner files the petition for cancellation." *Id.* Petitioner "must be shown to have had actual knowledge or constructive notice of [Respondent's] trademark use to establish a date of notice from which delay can be measured." *Id.* "'In the absence of actual knowledge [of trademark use] prior to the close of the opposition period, the date of registration is the operative date for laches,' as it provides constructive notice to petitioner of the registrant's claim of ownership." *Id.* (quoting *Teledyne Tech. Inc. v. Western Skyways Inc.*, 78 USPQ2d 1203, 1210 n.10 (TTAB 2006)).

Respondent's registration issued on June 3, 2014. Petitioner commenced this proceeding on March 14, 2017. 1 TTABVUE. Respondent argues that "[m]ore than three years passed between Petitioner's notice of [Respondent's] claim and/or use of its mark on one hand and the filing of this cancellation on the other." 10 TTABVUE

---

[24] If a laches defense is established, "it will not serve as a bar against a petition for cancellation on a likelihood of confusion ground when confusion is inevitable," *Ava Ruha Corp.*, 113 USPQ2d at 1584, because "notwithstanding the equities between the parties and the equitable principles of § 1069, the public interest expressed in § 1052 is the dominant consideration." *The Ultra-White Co. v. Johnson Chem. Indus., Inc.*, 465 F.2d 891, 175 USPQ 166, 167 (CCPA 1972); *see also Hornby v. TJX Cos.*, 87 USPQ2d 1411, 1419 n.9 (TTAB 2008) ("The only exception [to the application of laches] is when confusion is inevitable, because any injury to the defendant caused by the plaintiff's delay is outweighed by the public's interest in preventing confusion."). However, in view of our determination on the laches defense, in this case we need not consider whether confusion is inevitable, though we observe that confusion often is found inevitable in cases like this where the marks and goods are identical and there is no restriction on trade channels. *Ultra-White*, 175 USPQ at 167.

15. Respondent's theory is that Petitioner was on notice of Respondent's mark on May 1, 2013, when Mr. McClenney's then-pending application Serial No. 85823586 to register KEMI O-R-G-A-N-I-C-S OYL and design was suspended based on the **non-use based** application that matured into Respondent's involved registration. 10 TTABVUE 15. Respondent cites no authority for the proposition that the prospective citation of Respondent's intent-to-use application, which had not been amended to allege use, put Petitioner on notice of Respondent's use of his mark, and, in any event, the record does not show that there was any use of Respondent's involved mark at the time. Respondent's statement of use claimed that the first use of his mark was on November 1, 2013, six months after the issuance of the office action, and nearly two months after the close of the period to oppose Respondent's application on September 12, 2013.

In the absence of evidence of Petitioner's actual knowledge of Respondent's actual use of his mark prior to the close of the opposition period, the June 3, 2014 date of registration is the operative date for laches. *Ava Ruha Corp.*, 113 USPQ2d at 1580. Petitioner commenced this proceeding a little less than three years later. "Although this delay is not extreme, time periods shorter than, or slightly longer than this, have supported a laches defense." *Id*. at 1581 (citing *Teledyne*, 78 USPQ2d at 1203 (finding laches based on three years and eight months of unexplained delay) and *Trans Union Corp. v. Trans Leasing Int'l Inc.*, 200 USPQ 748, 756 (TTAB 1978) (finding laches based on a two and a half year delay)). We thus must consider the reasons for Petitioner's delay.

Respondent argues that after his registration issued, "Petitioner did nothing . . . before finally filing the present cancellation on March 14, 2017." 10 TTABVUE 15. His claim is not supported by the record, which shows that the parties engaged in correspondence regarding their respective rights in the KEMI OYL mark. On June 11, 2014, a little more than a week after Respondent's registration issued, he sent an email to a person named Julie Lee under the subject line "ebay copyright [sic] violation," alleging that the "Kemi Organic Oyl is in direct infringement of our Registered Trade mark and we will take any action to protect our Trade Mark as the item is not manufactured by us and clearly considered by us as FAKE." Benfield Supplemental Decl. ¶ 3; Ex. 10 (13 TTABVUE 21).[25] Petitioner responded to the email to Ms. Lee on July 9, 2014, stating that "[t]his is the Kemi Organics company, manufacturers of Kemi-Oyl. We have not heard of you. What phone number can you be reached on? Where is your operation located?" Respondent replied the same day by asking for Petitioner's contact information. Benfield Supplemental Decl. ¶ 3; Ex. 10 (13 TTABVUE 20). Respondent sent three follow-up emails in July 2014 to Petitioner and Mr. McClenney's counsel about his then-pending application, in which Respondent continued to allege infringement of his registered mark. Benfield Supplemental Decl. ¶ 3; Ex. 10 (13 TTABVUE 18-20). As discussed below, Petitioner

---

[25] Ms. Lee's affiliation is not indicated in the email, which is directed to her gmail.com address, but it appears that Respondent identified Ms. Lee from a display of Petitioner's products on eBay. Benfield Supplemental Decl. ¶ 3; Ex. 10 (13 TTABVUE 21). In any event, subsequent correspondence from Petitioner to Respondent in July 2014 indicates that the email to Ms. Lee reached Petitioner shortly after it was sent to Ms. Lee.

did not respond to these emails until late June 2016, nearly two years later. Benfield Supplemental Decl. ¶¶ 3-4; Exs. 10-11 (13 TTABVUE 18, 22-25).

There is no testimony from Mr. McClenney or Petitioner's counsel explaining Petitioner's silence for nearly two years in response to Respondent's infringement claim. Likewise, there is no testimony supporting the argument in Petitioner's Rebuttal Trial Brief that when Petitioner received Respondent's initial email in June 2014, "Petitioner concluded that [Respondent's] threats were baseless since there was no evidence of any U.S. sales of [Respondent's] product," that "[o]nly in 2016, once it became aware of [Respondent's] sales activities in the United States, did Petitioner hire counsel to investigate [Respondent's] claims," 13 TTABVUE 8, or that Petitioner conducted an investigation regarding Respondent's sales in 2014. The only evidence in the record that spans the entire period of Petitioner's silence—the file history of Mr. McClenney's application—reflects Petitioner's desultory attitude toward its KEMI OYL mark between 2014 and 2016. The application was abandoned, and then revived, three separate times following the issuance of the May 1, 2013 office action noting the pendency of Respondent's application, including twice after the receipt of Respondent's emails in June and July 2014, before being abandoned for good in August 2016. 9 TTABVUE 96, 106, 140, 144, 150, 154, 162.

On June 12, 2016, the June and July 2014 email chain ending with Respondent's July 25, 2014 email was forwarded from customerservice@kemiorganics.net to Mr. McClenney and then from Mr. McClenney to Petitioner's counsel of record in this proceeding. 13 TTABVUE 18. The transmission of these emails to Petitioner's counsel

resulted in the preparation and transmission of a June 28, 2016 letter from Petitioner's counsel to Respondent, in which Petitioner asserted that it had priority of use of the KEMI OYL mark and that Respondent was the infringer. Benfield Supplemental Decl. ¶ 4; Ex. 11 (13 TTABVUE 22-25). Petitioner argues that "[t]his letter clearly demonstrates that Petitioner did not remain silent once it realized that Registrant was attempting to establish a market in the United States for its KEMI OYL branded products," 13 TTABVUE 8, but there is again no testimony regarding why the 2014 emails were transmitted to counsel only in June 2016, or regarding the basis for Petitioner's allegedly delayed realization that Respondent "was attempting to establish a market in the United States for its KEMI OYL branded products."

The June 28, 2016 letter discussed various principles of United States trademark law, including priority (based primarily upon Patent and Trademark Office records), asserted that Respondent's KEMI OYL mark infringed Petitioner's KEMI OYL mark, and concluded as follows:

> Should you decide not to stop using KEMI OYL as your trademark in the United States, Kemi Organics will file a cancellation proceeding with the Trademark Trial and Appeal Board of the United States Patent and Trademark Office. Moreover, if during discovery in the cancellation proceeding, we uncover evidence that you knew of Kemi Organics' KEMI OYL trademark when you filed your U.S. trademark application, meaning that you willfully infringed Kemi Organic's [sic] trademark, Kemi Organics will file a federal trademark infringement suit in U.S. district court.

Benfield Supplemental Decl. ¶ 4; Ex. 11 (13 TTABVUE 24).

The letter demanded a response by July 20, 2016, but there is no evidence in the record of any response, or any further correspondence between the parties prior to

the filing of this proceeding. Petitioner argues that "once Petitioner realized that Registrant was continuing its [sic] use of a KEMI OYL trademark, it filed the Petition for Cancellation," 13 TTABVUE 9, but there is again no testimony explaining this allegedly delayed realization that caused Petitioner to file this proceeding on March 14, 2017, nine months later.

At the same time, however, Petitioner's claim that Respondent's inconspicuous sales of products under his KEMI OYL mark did not justify the assertion of a claim until 2016 is supported by Respondent's interrogatory answer regarding his gross sales of products in the United States. Benfield Decl. ¶ 9; Ex. 9 (Response to Interrogatory No. 4) (9 TTABVUE 332). Respondent could not provide figures regarding any sales in 2014,[26] when Respondent first corresponded with Petitioner, and he reported gross sales in the United States of $383.52 in 2015 and $6,811.50 in 2016. Response to Interrogatory No. 4 (9 TTABVUE 332). By Respondent's own admission, his sales under the KEMI OYL mark between 2014, when his registration issued, and 2016, when Petitioner threatened a cancellation action, were negligible.

"The defense of laches is not determined by adherence to rigid legal rules; rather, we analyze laches by a consideration of the specific facts and a balancing of the respective interests and equities of the parties, as well as of the general public." *Jansen Enters. Inc. v. Rind*, 85 USPQ2d 1104, 1117 (TTAB 2007). Taking into account the "respective interests and equities of the parties," including Respondent's

---

[26] Respondent explained that he "has only aggregated sales data for all distribution channels worldwide prior to 2015." Response to Interrogatory No. 4 (9 TTABVUE 332).

negligible sales and the fact that Respondent, the first party to assert priority of use and infringement of the KEMI OYL mark, **also** remained silent after July 2014, we find that Petitioner's delay in seeking cancellation of Respondent's registration was not unreasonable. Respondent has thus failed to prove his laches defense. For the sake of completeness, however, we will determine whether Respondent showed prejudice resulting from Petitioner's delay.

### B. Prejudice

"Prejudice is generally shown by the fact that in reliance on petitioner's silence, respondent built up a valuable business and goodwill around the mark during the time petitioner never objected." *Turner v. Hops Grill & Bar Inc.*, 52 USPQ2d 1310, 1313 (TTAB 1999). Respondent testified that "US sales of KEMI-OYL products grew slowly at first" but that "[b]eginning in November 2015, I embarked on an aggressive US growth strategy, hiring a US-based marketing consultant, meeting with a number of potential US distributors, and exploring online direct-to-consumer retail operations. As a result, US sales of KEMI OYL-branded products exploded in early 2016, generating monthly revenues approximately 18 times higher than in 2015." Gupta Decl. ¶ 12 (10 TTABVUE 20).

Respondent's claim of prejudice does not withstand scrutiny. Notably absent from Mr. Gupta's declaration are his actual sales figures, discussed above, which show that while his business did indeed achieve revenues in 2016 "approximately 18 times higher than in 2015," the increase in those revenues was against a baseline of 2015 sales of $383.52, that the 2016 revenues amounted to fewer than $7,000, and that as

of the end of July 2017, revenues to date for 2017 were trending downward, as they annualized to lower sales than in 2016. Response to Interrogatory No. 4 (9 TTABVUE 332). On this record, we cannot find that Respondent was prejudiced because he "built up a valuable business and goodwill around the mark during the time petitioner never objected." *Turner*, 52 USPQ2d at 1313 (finding prejudice from delay in petitioning to cancel where sales during the period of delay "went from approximately $7 million to $58 million, and the business continues to grow"); *see also Ava Ruha Corp.*, 113 USPQ2d at 1583 (finding prejudice from delay in petitioning to cancel where respondent "expanded its business by adding fifteen additional stores and spending $7.5 million on advertising and promotions"). Respondent's laches defense fails for the separate reason that he has not shown prejudice resulting from the delay.

## V.  Conclusion

Petitioner has proven the elements of its case under Section 2(d) of the Trademark Act, priority and likelihood of confusion, because the parties stipulated that confusion is likely and Petitioner proved, by a preponderance of the evidence, that it used the common law KEMI OYL mark prior to Respondent's constructive use date, while Respondent failed to establish a prima facie case that Petitioner abandoned its mark. Respondent also failed to show that Petitioner's claim is barred by laches, and thus failed to prove "an exception for issuing a judgment in favor of [the] party that has proved its case." *Jansen Enters.*, 85 USPQ2d at 1117.

**Decision:** The Petition for Cancellation is granted and Registration No. 4544475 will be cancelled in due course.